Robert Wayne O'FERRELL and Mary Ann O'Ferrell, Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Civil Action No. 92–A–1450–S.

United States District Court, M.D. Alabama, Southern Division.

June 26, 1997.

1520

G. William Gill, Montgomery, AL, for Plaintiffs.

David L. Allred, Asst. U.S. Atty., Montgomery, AL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

ALBRITTON, District Judge.

#### I. *INTRODUCTION*

This cause is before the court on the Motion for Summary Judgment filed by defendant the United States of America ("the United States").[1]

---

1. The United States actually filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. The court ordered that the United States' Motion should be treated as a Motion for Summary Judgment. Pursuant to that order, the court gave the parties additional time to file affidavits, documents, and other evidence in support of and in opposition to this Motion.

On November 20, 1992, Robert Wayne O'Ferrell ("Mr. O'Ferrell") and Mary Ann O'Ferrell ("Mrs. O'Ferrell") (collectively referred to as "the Plaintiffs") filed this action *pro se* in this court. On February 19, 1993, the court appointed counsel to represent the Plaintiffs.

On April 29, 1993, the Plaintiffs filed their First Amended Complaint. In their Complaint and amendment thereof, the Plaintiffs assert claims against the United States for breach of contract and various torts pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*; and claims against unnamed government agents for constitutional violations pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Named as defendants were the United States and fictitious defendants A–Z.

On October 27, 1993, the court granted Kenneth R. Jones's Motion to Intervene as Trustee of the Plaintiffs' bankruptcy estate.

Jurisdiction is based on a federal question pursuant to 28 U.S.C. §§ 1331 and 1346(b).

For the reasons stated below, this court finds that the Motion for Summary Judgment is due to be DENIED, in part, and GRANTED, in part, and that some of the Plaintiffs' claims are due to be DISMISSED and some allowed to proceed.

## II. *FACTS*

Submissions before the court establish the following facts:[2]

On December 16, 1989, Judge Robert S. Vance ("Judge Vance") of the United States Court of Appeals for the Eleventh Circuit was killed and his wife, Helen Rainey Vance, was seriously injured by a mail bomb delivered to their home in Mountain Brook, Alabama. On December 18, 1989, attorney Robert E. Robinson ("Robinson") was killed after receiving a mail bomb in Savannah, Georgia. On that same day, a mail bomb was delivered to the Eleventh Circuit Court of Appeals in Atlanta, Georgia. On December 19, 1989, the National Association for the Advancement of Colored People's Regional Office in Jacksonville, Florida received a mail bomb. Government agents detonated the latter two mail bombs.[3] Several death threat letters to various Eleventh Circuit judges and others, as well as a letter claiming responsibility for the mail bombings, were subsequently mailed.

Shortly thereafter, the Federal Bureau of Investigation ("FBI") began an investigation into the mail bombings. The FBI laboratory allegedly determined that documents typed by Mr. O'Ferrell and filed with the Eleventh Circuit in Atlanta, relating to his lawsuit against Gulf Life Insurance Company, were typed on the same typewriter used to type the mail bomb package labels and the death threat letters. Based on the alleged determination of a typewriting match, Mr. O'Ferrell became a primary suspect in the early stages of the FBI's mail bombings investigation.

Between January 20 and 23, 1989, United States Magistrate Judge John L. Carroll ("Judge Carroll") issued search warrants for, *inter alia*, the Plaintiffs' residence, automobiles, salvage business, and field lines and septic tanks, located in New Brockton and Enterprise, Alabama. FBI agents then executed these warrants.

On or about January 22, 1989, members of the media converged on the Plaintiffs' residence to cover the search. The mail bombings investigation received much national media exposure during the ensuing weeks of the searches and Mr. O'Ferrell was implicated in the bombings.

The court will elaborate on certain facts in the discussion sections as they relate to specific claims.

---

**2.** The United States contests virtually none of the Plaintiffs' allegations and there is very little evidence before the court. Therefore, the Plaintiffs' allegations serve as the primary source of facts. Moreover, many of the Plaintiffs' allegations are extremely vague and conclusory. Because of the allegations' nonspecificity and because the United States moves for summary judgment on procedural, rather than substantive, grounds, the facts in this section are both general and brief.

**3.** The bombs that killed Judge Vance and Robinson, as well as the bombs that were detonated, are collectively referred to as "the mail bombings."

FBI agents interrogated the Plaintiffs separately on several occasions about their involvement in the mail bombings. The Plaintiffs allege that the interrogations were characterized by abusive, improper, and unlawful interrogation techniques. The Plaintiffs also allege that their family members, friends, and business customers were subjected to interrogations about whether the Plaintiffs were involved in the mail bombings.

Moreover, the Plaintiffs allege that their business was filled with more than one hundred local and federal law enforcement officers, as well as many media reporters. The Plaintiffs allege that FBI agents required them to close their business for approximately four days while agents conducted a search. The Plaintiffs further allege that during the search of their business, FBI agents prohibited Mr. O'Ferrell from speaking to his wife by telephone without FBI monitoring.

Furthermore, the Plaintiffs allege that the searches of their property were highly intrusive. The Plaintiffs allege that many of their personal belongings, including religious items, were seized and retained by FBI agents for an unreasonably long period of time.

On October 9, 1990, the United States Department of Justice notified the Plaintiffs that they no longer were considered "targets" of the mail bombings investigation.

The Plaintiffs allege that the United States publicly offered a $500,000.00 reward for information leading to the arrest and/or conviction of the person or persons responsible for the mail bombings. The Plaintiffs further allege that Mrs. O'Ferrell provided incriminating information to the United States about Walter Leroy Moody ("Moody"), who was subsequently convicted of the mail bombings. The Plaintiffs claim that Mrs. O'Ferrell's information satisfied the terms of the reward offer but that they did not receive any reward.

The Plaintiffs contend that their business, their reputations, and their marriage were destroyed by the FBI investigation, by the extensive publicity given to the investigation, and by the government's failure to publicly exonerate them from any involvement in the mail bombings. Based on these and other more specific allegations, the Plaintiffs filed suit against the United States and fictitious defendants A–Z.

## III. SUMMARY JUDGMENT STANDARD

The purpose of a motion for summary judgment is to challenge the contention that a case presents a genuine issue of material fact necessitating a trial. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion." *Id.* at 323, 106 S.Ct. at 2553. Accordingly, summary judgment is appropriate if the movant demonstrates that the non-movant has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co.*, 932 F.2d 1384, 1387–88 (11th Cir.), *cert. denied*, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case does indeed exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). A dispute of mate-

rial fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. It must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates*, 887 F.2d 1493 (11th Cir.1989). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## IV. *DISCUSSION: THE BREACH OF CONTRACT* CLAIM

■ The Plaintiffs allege that the United States represented to them that they satisfied the terms of the $500,000.00 reward offer by providing information leading to Moody's conviction, but that the United States reneged on giving them the reward. Based on these allegations, the Plaintiffs claim that the United States is liable for breach of contract. The Defendants contend that the court lacks jurisdiction over the Plaintiffs' contract claim.

Contract claims against the United States exceeding $10,000.00 must be filed in the United States Court of Federal Claims, not in a United States District Court. *See* 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1). Because the Plaintiffs' breach of contract claim exceeds that amount, this court lacks jurisdiction over this claim. Accordingly, the Plaintiffs' breach of contract claim is due to be DISMISSED without prejudice for lack of subject matter jurisdiction.

**4.** The United States is the only proper defendant for claims brought under the FTCA. 28 U.S.C.

## V. *DISCUSSION: THE FTCA ACTION*

### A. *The FTCA*

■ Because of the doctrine of sovereign immunity, the United States is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (citation omitted). Through the FTCA, Congress has created a limited waiver of the United States's sovereign immunity, authorizing

claims against the United States, for money damages, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).[4] Congress, however, enacted several exceptions to this waiver, two of which are asserted by the United States and are described below. If either exception applies to a claim, then this court lacks jurisdiction to consider the claim, because the United States has not waived its sovereign immunity and cannot be sued on that claim.

#### 1. *The Discretionary Function Exception*

The United States asserts that it cannot be held liable on the Plaintiffs' claims because all of the acts complained of were, if true, part of discretionary functions of the federal agents and, therefore, not actionable under the FTCA.

■ The discretionary function exception, in relevant part, precludes government liability for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). A court must apply a two-part test to determine whether the discretionary

§ 2679(b)(1).

function exception applies to the challenged government conduct. *Powers v. United States,* 996 F.2d 1121, 1124 (11th Cir.1993) (citing *Autery v. United States,* 992 F.2d 1523, 1526 (11th Cir.1993)).

■■■ "First, [a] court must look to the nature of the challenged conduct and consider whether the challenged conduct involves an element of judgment or choice." *Id.* (citing *United States v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991); *Autery,* 992 F.2d at 1526).[5] The discretionary function exception does not apply "if a 'federal statute, regulation, or policy specifically prescribes a course of action-for an employee to follow.'" *Autery,* 992 F.2d at 1526 (quoting *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273). Nor will the discretionary function exception apply if constitutional law specifically prohibits the challenged conduct. *See, e.g., Prisco v. Talty,* 993 F.2d 21, 26 n. 14 (3d Cir.1993); *Sutton v. United States,* 819 F.2d 1289, 1293 (5th Cir.1987); *Myers & Myers, Inc. v. United States Postal Serv.,* 527 F.2d 1252, 1261 (2d Cir.1975).

■■■ Second, if the challenged conduct involves an element of judgment or choice, a court must determine whether the challenged conduct "'is of the kind that the discretionary function exception was designed to shield.'" *Powers,* 996 F.2d at 1125 (quoting *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273). "Because the purpose of the [discretionary function] exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, ... the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273–74 (internal quotations and citations omitted). Significantly, the discretionary function exception may apply even if the challenged conduct was negligent, wrongful, intentional, or an abuse of discretion. *See* 28 U.S.C. § 2680(a); *Dale-*

*hite v. United States,* 346 U.S. 15, 33–34, 73 S.Ct. 956, 966–67, 97 L.Ed. 1427 (1953).

Therefore, the court has no jurisdiction to consider any claim which falls within this exception, because the United States is immune from suit on any such claim.

2. *The Intentional Torts Exception*

The United States also contends that certain of the Plaintiffs' claims are barred because they fall within the intentional torts exception to the FTCA.

The intentional torts exception (" § 2680(h)"), excepts eleven intentional torts from the FTCA's limited waiver of sovereign immunity. In particular, § 2680(h) excepts "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). However, "with regard to acts or omissions of investigative or law enforcement officers of the United States Government,"[6] the FTCA applies "to any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). In other words, the FTCA does *not* apply to any claim based on the acts or omissions of such officers, including FBI agents, "arising out of" libel, slander, misrepresentation, deceit, or interference with contract rights, and the Plaintiffs are barred by sovereign immunity from asserting any such claims against the United States. *See* 2 Lester S. Jayson, *Handling Federal Tort Claims* § 13.06[1][b] (1996).

**B.** *The Claims Relating to Use of the Media*

The Plaintiffs allege that FBI agents and other government officials intentionally, and with reckless disregard for the consequences to the Plaintiffs, implied to the public through leaks and disclosures that the Plain-

---

**5.** Whether a government actor's conduct involves an element of judgment or choice depends on the nature of the actor's conduct, not the actor's status. *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273 (citation omitted).

**6.** An "investigative or law enforcement officer" is "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

tiffs were involved in the mail bombings, knowing this to be without reliable evidentiary support. Specifically, the Plaintiffs allege that FBI agents leaked or disclosed and that government officials disclosed to the media that Mr. O'Ferrell was a suspect of the mail bombings, that he had used a typewriter used in the mail bombings, that he had failed polygraph tests, and that evidence was being gathered to support an indictment of him. The Plaintiffs assert that these actions support claims of negligence, negligent supervision, outrageous conduct, and invasion of privacy. The United States contends that these claims are barred by the discretionary function exception or, alternatively, by § 2680(h) as claims "arising out of" libel and slander.

As stated, claims brought under the FTCA may only be brought against the United States for negligent or wrongful conduct of any federal government employee who acts within the scope of his or her office or employment. 28 U.S.C. §§ 1346(b) and 2679(b)(1). In *Nadler v. Mann*, 951 F.2d 301 (11th Cir.1992), the Eleventh Circuit held that "[a]n [Assistant United States Attorney] does not act within the scope of his employment when he leaks information regarding a criminal investigation to the news media." *Id.* at 306.[7] Consequently, based on *Nadler*, this court probably lacks jurisdiction to consider claims against the United States relating to use of the media, to the extent that they are based on allegations of leaks made by FBI agents, because such leaks are likely not within the agents' scope of employment.

 Even assuming, however, the leaks were within the FBI agents' scope of employment, the court still lacks jurisdiction to consider the Plaintiffs' claims against the

United States relating to use of the media, based on leaks or disclosures by FBI agents and other government officials. How a plaintiff terms a claim does not determine whether that claim may be brought under the FTCA. In *Metz v. United States*, 788 F.2d 1528 (11th Cir.1986), *cert. denied*, 479 U.S. 930, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986), the Eleventh Circuit stated that "a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiffs claim." *Id.* at 1534 (quoting *Block v. Neal*, 460 U.S. 289, 297, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983)).[8] However, the Eleventh Circuit also stated that a plaintiff can "pursue 'a distinct claim arising out of other aspects of the Government's conduct.'" *Id.* (quoting *Neal*, 460 U.S. at 298, 103 S.Ct. at 1094). Therefore, the court needs to determine whether the underlying conduct which constitutes any excepted cause of action is "essential" to any of the Plaintiffs' claims.[9]

 Section 2680(h) precludes claims against the United States for defamation through its exceptions of claims arising out of libel and slander. *See Cooper v. American Auto. Ins. Co.*, 978 F.2d 602, 613 (10th Cir. 1992); *Jimenez–Nieves v. United States*, 682 F.2d 1, 6 (1st Cir.1982). A defamation claim requires the following: "'(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence; and (d) (certain types of harm).'" *Jimenez–Nieves*, 682 F.2d at 6 (quoting *Restatement*

---

7. In *Nadler v. Mann*, 951 F.2d 301 (11th Cir. 1992), the Eleventh Circuit reversed the district court's order that granted the defendants' motion to substitute the United States as the defendant in a defamation action to the extent that the substitution related to the leak. 951 F.2d at 306.

8. In *Neal*, the Supreme Court found that the plaintiff was not barred "from pursuing a distinct claim arising out of ... aspects of the Government's conduct" other than misrepresentation, 460 U.S. at 298, 103 S.Ct. at 1094, and that the Government's misstatements were "not essential to plaintiffs negligence claim." *Id.* at 297, 103 S.Ct. at 1094.

9. The proper analysis to determine whether a plaintiff's claim falls within a § 2680(h) exception is a comparison of the plaintiff's claim and "'the traditional and commonly understood definition' of the torts excepted by that section, rather than a comparison with the law of any particular state." *Metz*, 788 F.2d at 1535 n. 8 (quoting *United States v. Neustadt*, 366 U.S. 696, 706, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1961), and citing *Jimenez–Nieves v. United States*, 682 F.2d 1, 3–4 (1st Cir.1982)). *See also* 2 Lester S. Jayson, *Handling Federal Tort Claims* § 11.07 (1996).

*(Second) of Torts* § 558 (1977)). *Accord Talbert v. United States,* 932 F.2d 1064, 1066 (4th Cir.1991). A "defamatory statement" is a " 'communication' that tends 'to harm the reputation of another.' " *Id.* (quoting *Restatement (Second) of Torts* § 559 (1977)). The term " 'communication' is interpreted broadly 'to denote the fact that one person has brought an idea to the perception of another.' " *Id.* (quoting *Restatement (Second) of Torts* § 559 cmt. a (1977)).

The Eleventh Circuit in *Metz* addressed the scope of § 2680(h)'s slander exception. The Eleventh Circuit, *inter alia,* rejected Mr. Metz's claim for false light invasion of privacy and Mrs. Metz's claim for intentional infliction of emotional distress. The court found that the "wrong" complained of by the Metzes was alleged false statements by government officials that Mr. Metz had made personal threats against his supervisors. According to the court, the alleged false statements "constitute[d] slander" and were "essential" to these claims brought by the Metzes. *Metz,* 788 F.2d at 1535 (citation omitted).[10]

Furthermore, the Eleventh Circuit rejected Mrs. Metz's claim for invasion of privacy, based on intrusion into seclusion, in which Mrs. Metz had alleged that government officials entered her residence without her valid consent. The court stated that assuming "[Mrs.] Metz's consent was invalid, it is invalid solely because it was given in response to false statements made by [government] officials." *Id.* at 1536. The court then held that "Because the alleged slander is essential to [Mrs.] Metz's assertion that her consent was invalid, and because that assertion is in turn essential to her claim for intrusion, ... her claim for intrusion 'arises out of' slander."

*Id.* (citing *Neal,* 460 U.S. at 297, 103 S.Ct. at 1094).

In addition, the D.C. Circuit in *Kugel v. United States,* 947 F.2d 1504 (D.C.Cir.1991) considered a case with facts similar to those alleged here. Several periodicals and newspaper articles were published concerning the FBI's investigation of Mr. Kugel, including statements by FBI agents about the nature of the investigation, its length, and its inquiry into mail or other fraud. Mr. Kugel eventually was cleared of any wrongdoing and later sued the United States, claiming that FBI agents negligently initiated and conducted an investigation of his business practices. Mr. Kugel claimed that because of the FBI agents' conduct, he was forced into bankruptcy, was subjected to public ridicule and humiliation, and suffered stress-related seizures requiring medication and hospitalization. The D.C. Circuit stated that it appeared that "the cause of [Mr.] Kugel's injury was not the FBI's execution of the investigation but its dissemination of information associated with the investigation." *Id.* at 1507. The court subsequently held that because defamation was essential to Mr. Kugel's negligence claim, his claim was barred by § 2680(h). *Id.*[11]

Here, the Plaintiffs' claims, relating to use of the media, are based on allegations that FBI agents and other government officials made misleading statements through leaks and disclosures that presented Mr. O'Ferrell in a false light as a person who was involved in the mail bombings. The Plaintiffs' claims relating to the use of the media "resound in the heartland of the tort of defamation: the injury is to reputation; the conduct is the communication of an idea, either implicitly or explicitly." *See Jimenez–Nieves,* 682 F.2d at 6. *Accord Talbert,* 932 F.2d at 1066–67. The

---

**10.** Other cases also hold that false light invasion of privacy essentially amounts to libel or slander, and is, therefore, not actionable under the FTCA. *See, e.g. Johnson v. Sawyer,* 47 F.3d 716, 732 n. 34 (5th Cir.1995) (en banc); *Hobdy v. United States,* 762 F.Supp. 1459, 1462 (D.Kan.1991), *aff'd,* 968 F.2d 20 (10th Cir.1992).

**11.** Other courts have barred claims under § 2680(h) based on defamatory statements by FBI agents. *See, e.g., Thomas–Lazear v. F.B.I.,* 851 F.2d 1202 (9th Cir.1988) (holding that a claim for negligent infliction of emotional dis-

tress, based on alleged defamatory statements made by FBI agents to bank licensing officials that resulted in denial of the plaintiffs' application for a license, was barred because it was essentially a slander claim); *Broome v. Simon,* 255 F.Supp. 434 (W.D.La.1966) (holding that a claim alleging that FBI agents had conferred with a local police chief and falsely and maliciously told him that plaintiff was a member of a dangerous criminal ring was barred because it constituted nothing more than a slander claim).

alleged defamatory conduct by FBI agents and other government officials is " 'essential' " to the Plaintiffs' claims relating to use of the media. *See Metz,* 788 F.2d at 1534 (quoting *Neal,* 460 U.S. at 297, 103 S.Ct. at 1094). Therefore, all of the Plaintiffs' claims against the United States relating to use of the media "aris[e] out of" libel or slander and are barred by § 2680(h). Accordingly, the Motion for Summary Judgment is due to be granted as to these claims, and Plaintiffs' claims of negligence, negligent supervision, outrageous conduct, and invasion of privacy, relating to use of the media, are due to be DISMISSED for lack of subject matter jurisdiction.[12]

### C. *The Claims Relating to Closing of the Plaintiffs' Business*

The Plaintiffs allege that, without their consent, FBI agents closed their business for four days while conducting a search. Based on this alleged conduct, the Plaintiffs bring the following claims against the United States: interference with business; trespass; outrageous conduct; negligence; and negligent supervision. The United States contends that the Plaintiffs' claims are barred by § 2860(h) as claims "arising out of" interference with contract rights. Alternatively, the United States contends that the discretionary function exception bars the Plaintiffs' claims.

It is undisputed that allegations of an improper closing of the Plaintiffs' business by FBI agents relate to the criminal investigation of the Plaintiffs and are within the scope of the agents' employment. Therefore, the court will consider whether the Plaintiffs' claims, relating to the alleged improper closing of their business, are barred by one of the exceptions to the FTCA waiver of sovereign immunity.

#### 1. *The Interference with Business Claim*

■ Although the Eleventh Circuit has not addressed the issue of whether § 2680(h) bars FTCA claims for interference with business as claims "arising out of" interference with contract rights, several courts have so held. *See, e.g., Cooper v. American Auto., Ins. Co.,* 978 F.2d 602, 613 (10th Cir.1992); *Chen v. United States,* 854 F.2d 622, 628 n. 2 (2d Cir.1988); *Williamson v. United States Dep't of Agric.,* 815 F.2d 368, 378 (5th Cir. 1987); *Moessmer v. United States,* 760 F.2d 236, 237 (8th Cir.1985); *Art Metal–U.S.A., Inc. v. United States,* 753 F.2d 1151, 1153–55 (D.C.Cir.1985); *Small v. United States,* 333 F.2d 702, 704 (3d Cir.1964); *March VI Investment. L.P.v. McKay,* Civ. A. No. 94–D–1 570–N, 1996 WL 777104, at *12 (M.D.Ala. 1996). This conclusion is logical because under the torts of interference with business and contract rights, the duty is the same: "not to interfere with the [plaintiffs] economic relationship with third parties." *See Art Metal–U.S.A., Inc. v. U.S.,* 753 F.2d 1151, 1154 (D.C.Cir.1985). *See also Restatement (Second) of Torts* § 766 cmt. b (1979) ("[T]here is a general duty not to interfere intentionally with another's reasonable business expectancies of trade with third persons, whether or not they are secured by contract, unless the interference is not improper under the circumstances."). These two torts are "distinguished only because the plaintiffs rights or expectancies under [interference with contract rights] are secured by an existing contract." *Art Metal,* 753 F.2d at 1154. Therefore, it would be "illogical" for the United States to be liable for interference with a plaintiff's "mere expectation of entering a contract," but not for interference with a "contract already in existence." *Id.* at 1155. *Accord* 2 Lester S. Jayson, *Handling Federal Tort Claims* § 13.06[6] (1996). Accordingly, the Plaintiffs' claim of interference with business "aris[es] out of" interference with contract rights, and, thus, is barred by § 2680(h). The motion is due to be GRANTED on this claim, and this claim is due to be DISMISSED for lack of subject matter jurisdiction.[13]

#### 2. *The Trespass Claim*

The Plaintiffs' trespass claim, relating to the alleged improper closing of their busi-

---

**12.** In so holding, the court need not determine whether the discretionary function exception also bars the Plaintiffs' claims relating to use of the media.

**13.** In light of this holding, it is unnecessary for the court to examine whether the discretionary function exception also bars this claim.

ness, apparently is based on alleged unlawful interference with their business premises.[14] More specifically, the Plaintiffs allege that the United States's search warrant for their business was unlawfully obtained and, because of that, the search was unlawful. As stated, the United States asserts that this claim is barred by § 2680(h) and/or the discretionary function exception.

 With respect to the applicability of § 2680(h), the Plaintiffs' trespass claim is based on interference with their business premises itself, an allegation which is distinct from interference with their business transactions or prospective transactions conducted on those premises. The latter interference is essential to a claim for interference with contract rights while the former interference is not so essential. *See generally Hatahley v. United States,* 351 U.S. 173, 181, 76 S.Ct. 745, 752, 100 L.Ed. 1065 (1956) (holding that the FTCA allows the United States to be sued for trespass); *Black v. Sheraton Corp. of Am.,* 564 F.2d 531, 539–41 (D.C.Cir.1977) (holding that the FTCA allows the United States to be sued for trespass based on illegal eavesdropping); S.Rep. No. 588, at 3 (1973), *reprinted in* 1974 U.S.C.C.A.N. 2789, 2791 ("Obviously, it is the intent of the Committee that ... trespass ... be viewed as clearly within the scope of the Federal Tort Claims Act.... [T]he Committee amendment [to § 2680(h) ] would submit the Government to liability whenever its agents act under color of law so as to injure the public through search and seizures that are conducted without warrants or with warrants issued without probable cause."). Therefore,

the court finds that the Plaintiffs' trespass claim does not "aris[e] out of" interference with contract rights and, thus, is not barred by § 2680(h).

 With respect to the applicability of the discretionary function exception, the Plaintiffs seem to assert that the FBI agents who searched their business had no discretion to do so because the search was unconstitutional.[15] The Fourth Amendment to the Constitution guarantees that, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation...." U.S. Const. amend. IV. In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that if a person challenging the veracity of a warrant affidavit (the "Oath or affirmation" required by the Fourth Amendment) establishes that the affiant included in the affidavit "a false statement knowingly and intentionally, or with reckless disregard for the truth," and, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided ... as if probable cause was lacking on the face of the affidavit." *Id.* at 155–56, 98 S.Ct. at 2676. False statements made negligently or by innocent mistake are insufficient to invalidate a warrant. *Id.* at 171, 98 S.Ct. at 2684.

Here, in support of obtaining a search warrant for the Plaintiffs' business, the Unit-

---

**14.** Although the Plaintiffs do not specifically state the grounds on which their trespass claim is based, in Alabama a trespass on realty claim is defined as the wrongful interference with another's "bare possession of land." Ala.Code 1975, § 6–5–213. *See also Vasko v. Jardine,* 346 So.2d 962, 963 (Ala.1977) (observing that an action for trespass is a remedy for interference with a possessory right). Therefore, the court assumes that the Plaintiffs are basing their trespass claim on alleged unlawful interference with their business premises.

**15.** In their Renewed Objection to Magistrate Judge's Order Denying Plaintiffs' Motion to Compel the Production of Documents and Motion to Allow Plaintiff to Submit Additional Evidence and Argument in Opposition to the Defendant's

Motion to Dismiss and Motion for Summary Judgment, filed on September 26, 1996, the Plaintiffs allege that one or more FBI agents "made or caused to be made [in an affidavit] intentionally perjurious or recklessly false statements in support of the subject search warrant in violation of *Franks v. Delaware,* 438 U.S. 154[,] 98 S.Ct. 2674 [57 L.Ed.2d 667] (1978) and progeny." The Plaintiffs further allege that other than these false statements, no other probable cause to search existed. A logical extension of these allegations is that the search lacked probable cause and, thus, was unconstitutional. A further logical extension is that the FBI agents had no discretion to search their business due to the alleged unconstitutionality of the search.

ed States submitted an affidavit of Stephen E. Brannan ("Brannan"), an FBI special agent, to Judge Carroll. In the affidavit, Brannan stated that on December 22, 1989 agents at the FBI laboratory in Washington, D.C., advised him that death threat letters mailed to judges of the Eleventh Circuit and to other persons were prepared on the same manual typewriter as the typewritten impressions found on the four mail bomb package labels. (Brannan Affidavit in Support of Warrant to Search the Plaintiffs' Business, ¶ 24.) Brannan further stated that Bob Thompson, an FBI document examiner, advised him that, while examining *pro se* filings at the Eleventh Circuit in Atlanta, Thompson observed certain typewritten documents relating to the case of *O'Ferrell v. Gulf Life Ins. Co.,* 874 F.2d 819 (3rd Cir.1964). (*Id.* at ¶ 37.) Judge Vance participated in the Gulf Life suit on appeal, which was decided against Mr. O'Ferrell. Brannan stated that among the documents observed was a typewritten envelope listing Mr. O'Ferrell as the return addressee, which was postmarked "Dothan, Alabama 363 PM 17 Aug 1988" and addressed to "The United States District Court Middle District of Alabama," (*Id.*) and two original notices of appeal, dated July 13, 1988. (*Id.* at ¶ 38.) Brannan stated that these documents were hand-carried to the FBI laboratory. (*Id.* at ¶ 37, 38.) Notably, Brannan stated that "On January 19, 1990, the FBI laboratory determined that the envelope ... and the two notices of appeal ... were prepared on the same typewriter that was used to prepare the labels on the package bombs ... and ... the [death] threat letters sent to the judges of the 11th Circuit Court of Appeals." (*Id.* at ¶ 39.) On January 23, 1990, Judge Carroll issued a search warrant for the Plaintiffs' business, and Brannan's affidavit was attached to the warrant as Attachment III.

The Plaintiffs submitted the affidavit of John E. Phillips ("Phillips") to establish that Brannan's statement of a typewriting match is a false statement made with at least reckless disregard for the truth. Phillips stated that, "based on fifty-five years of experience in personally selling and servicing and repairing manual and electric typewriters," (Phillips Affidavit, ¶ 9.) he is "very familiar with the different type of type utilized by various manufacturers of electric and manual typewriters." (*Id.* at ¶ 2.) It is unclear what his "experience" specifically entails. However, the United States has not contended that he is unqualified to give his opinion concerning typewriting analysis. For purposes of this Opinion and Order only, the court will assume that Phillips is qualified to give his opinion concerning typewriting analysis.

Phillips stated by affidavit that he reviewed the following documents that were submitted by the United States to Judge Carroll in support of obtaining a search warrant for the Plaintiffs' business, and which were attached to the warrant: a death threat letter; one of the notices of appeal; and the envelope. (*Id.* at ¶ 4.) Phillips stated that the death threat letter "was typed on a ... manual typewriter [with] a Pica 10 pitch .... [that] is out of alignment as is evidenced by the dropped A, D, and E and the raised G." (*Id.* at ¶ 6.) Phillips further stated that the notice of appeal and the envelope were "typed on an electric typewriter in good condition that had a 12 pitch Elite style of type." (*Id.* at ¶ 7, 8.) Phillips stated that "[N]o reasonably competent and qualified typewriter examiner could be of the opinion that all three of these documents were produced using the same typewriter." (*Id.* at ¶ 9.) Phillips also stated that "the difference in type is so significant that the difference should be readily apparent to even a non-expert." (*Id.* at ¶ 9.)

Viewing Phillips's affidavit in the light most favorable to the Plaintiffs, as the court must do in determining a motion for summary judgment, a material issue of fact exists as to whether Brannan's statement of a typewriting match is false. For purposes of this Opinion and Order only, the court will assume that Brannan's statement of a typewriting match is false.

As to whether statements in Brannan's affidavit were made with at least reckless disregard for the truth, the Supreme Court in *Franks* held that only deliberately or recklessly false statements "of the affiant, not of any nongovernmental informant," can be stricken from the affidavit in determining

probable cause. *See Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. Consistent with this holding, a government agent or instrumentality making deliberately or recklessly false statements to an affiant that cause the affiant, in turn, to innocently make false statements in an affidavit can trigger the misstatements to be stricken from the affidavit in determining probable cause. *See id.* at 163 n. 6, 98 S.Ct. at 2680 n. 6 (noting that "police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity"); *United States v. Kirk,* 781 F.2d 1498, 1503 & n. 5 (11th Cir.1986) (finding that aside from the affiant, the conduct of three other government agents, who were part of the surveillance team and whose statements were relied on by the affiant, was considered in determining whether false statements in the affidavit were deliberately or recklessly made). *See also United States v. McAllister,* 18 F.3d 1412, 1417 (7th Cir.1994) (holding that statements can be stricken "when one government agent deliberately or recklessly misrepresents information to a second agent, who then innocently includes the misrepresentations in an affidavit"); *United States v. Calisto,* 838 F.2d 711, 714 (3d Cir.1988) (same); *United States v. Roberts,* 747 F.2d 537, 546 & n. 10 (9th Cir.1984) (same); 2 Wayne R. LaFave, *Search and Seizure* § 4.4(b) (1996) (same). *See generally United States v. Smith,* 918 F.2d 1501, 1508 (11th Cir.1990) (discussing *Franks* and then stating that the informant who caused the affiant to make a false statement "was not an agent or instrumentality of the government within the meaning of *Franks* "), *certs. denied,* 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991) and 502 U.S. 890, 112 S.Ct. 253, 116 L.Ed.2d 207 (1991). The principle of striking false statements by an affiant that were caused to be made by a government agent or instrumentality through deliberately or recklessly making false statements to the affiant is logical because it prevents a government agent or officer to "circumvent *Franks* by filtering information through a second officer, acting as the affiant." *See Roberts,* 747 F.2d at 546 n. 10.

The only evidence before the court that a typewriting match was made is Brannan's statement that the FBI laboratory "determined" there to be a match. It is, thus, unclear whether the FBI laboratory or any government agent other than Brannan advised Brannan of a typewriting match. Consequently, the court will consider whether Brannan, the FBI laboratory, and/or a government agent other than Brannan acted with at least reckless disregard for the truth in making or causing to be made a false statement in Brannan's affidavit.

▉ Within the *Franks* framework, "reckless disregard for the truth" occurs where a government agent or instrumentality harbored or "should have harbored serious doubts" about the truth of a statement but made the statement anyway. *See Kirk,* 781 F.2d at 1503. *See also Lippay v. Christos,* 996 F.2d 1490, 1500–01 (3d Cir.1993) ("high degree of awareness of ... probable falsity"); *Salmon v. Schwarz,* 948 F.2d 1131, 1140 (10th Cir.1991) ("serious doubts as to the truth"); *United States v. A Residence Located at 218 Third St., New Glarus, Wis.,* 805 F.2d 256, 258 (7th Cir.1986) (same). Here, if the FBI laboratory or a government agent did not advise Brannan that there was a typewriting match, Brannan's statement that the FBI laboratory found a match would be a deliberately false statement. Or, if the FBI laboratory or a government agent advised Brannan that the laboratory had determined that there was a match when, in fact, no such determination had been made, there would have been a deliberately false statement. Alternatively, if the FBI laboratory or a government agent advised Brannan that there was a match, Phillips's statement that "no reasonably competent and qualified typewriter examiner could be of the opinion" that there was a match creates a material issue of fact whether the FBI laboratory or a government agent made at least a recklessly false statement to Brannan. Under this scenario, based on Phillips's statement that "the difference in type is so significant that the difference should be readily apparent to even a non-expert," a material issue of fact also exists whether Brannan made a recklessly false statement in his affidavit. *See generally Kirk,* 781 F.2d 1498 (finding that government agents made and caused to be made

reckless misstatements in a search warrant affidavit when, in identifying two individuals, they "paid no attention to the physical descriptions of the individuals' height, weight, hair color, and age" which were listed on photographs). Therefore, a material issue of fact exists as to whether Brannan, the FBI laboratory, and/or a government agent other than Brannan, with at least reckless disregard for the truth, made or caused to be made a false statement in Brannan's affidavit, which was presented to Judge Carroll as evidence that probable cause existed for issuing a search warrant.

 Assuming that Brannan's statement of a match is false and was made or caused to be made with at least reckless disregard for the truth by a government agent or instrumentality, pursuant to *Franks* these statements must be excised from Brannan's affidavit when examining it for sufficient probable cause to search the Plaintiffs' business. *See Franks*, 438 U.S. at 156, 98 S.Ct. at 2676. *See also New York v. Burger*, 482 U.S. 691, 699, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987) (applying the Fourth Amendment to a search of a business). The duty of a magistrate judge, when issuing a warrant, is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Furthermore, "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* (quotation and citation omitted).

Here, the Plaintiffs cite the deposition testimony of Charles Archer ("Archer"), the FBI special agent in charge of the mail bombings investigation, who testified that other than the statement of a typewriting match, no probable cause to search existed. (Archer Deposition, at 103.) The United States does not dispute this testimony. Thus, assuming that the statement of a typewriting match is disregarded from Brannan's affidavit, based on Archer's testimony, Judge Carroll did not have a "substantial basis for concluding that

probable cause existed" to search the Plaintiffs' business because the statement of a typewriting match was necessary to a finding of probable cause. *See id.* (quotation and citation omitted). Accordingly, the Plaintiffs have submitted affirmative evidence that the search warrant for their business was invalid for lack of probable cause. *See Franks*, 438 U.S. at 156, 98 S.Ct. at 2676.

 In the absence of a valid search warrant, a criminal investigatory search can still be constitutional under limited circumstances, such as where voluntary consent is given, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973), or where there is probable cause and exigent circumstances. *See Horton v. California*, 496 U.S. 128, 137 n. 7, 110 S.Ct. 2301, 2308 n. 7, 110 L.Ed.2d 112 (1990). *Accord U.S. v. Mikell*, 102 F.3d 470, 475 (11th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1459, 137 L.Ed.2d 563 (1997). Here, the United States does not cite any basis justifying a warrantless search of the Plaintiffs' business, and the court has not found any such basis upon independent review. Therefore, because the Plaintiffs have submitted affirmative evidence that the search warrant for their business was invalid for lack of probable cause, and because there is no evidence before the court suggesting that a warrantless search of the Plaintiffs' business was justified, the Plaintiffs have shown that a genuine issue of material fact exists as to whether the search of their business was unconstitutional.

 At the time the United States searched the Plaintiffs' business, the Fourth Amendment specifically prohibited FBI agents from conducting a criminal investigatory search of a business when the search is executed pursuant to a warrant invalidated due to a *Franks* violation and there is no basis justifying a warrantless search. Although courts routinely hold that how and under what circumstances a law enforcement officer conducts a criminal investigation is a discretionary function, *see e.g., Horta v. Sullivan*, 4 F.3d 2, 21 (1st Cir.1993); *Georgia Cas. & Sur. Co. v. United States*, 823 F.2d 260, 263 (8th Cir.1987); *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir.), *cert de-*

*nied,* 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986), an officer has no discretion to conduct a criminal investigatory search pursuant to a warrant invalidated due to a *Franks* violation where no basis justifying a warrantless search exists, whether or not the officer knew or had reason to know that the warrant was invalid. To be sure, execution of a search warrant obtained by deliberate or reckless misstatements is per se "unreasonable." *See United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984) (citing *Franks* in holding that the good faith exception to the exclusionary rule does not apply to execution of a warrant obtained by deliberate or reckless misstatements in a supporting affidavit).

In this case, a material issue of fact exists whether FBI agents had discretion to search the Plaintiffs' business because the Plaintiffs have submitted affirmative evidence that the United States searched their business pursuant to a warrant invalid due to a *Franks* violation and there is no evidence that there was a basis justifying a warrantless search. Therefore, the Plaintiffs' trespass claim is not barred by § 2680(h) or the discretionary function exception. Accordingly, the United States's Motion for Summary Judgment on this claim is due to be DENIED.

### 3. *The Outrageous Conduct and Negligence Claims*

█ Based on the court's discussion of the Plaintiffs' interference with business claim, *supra,* to the extent that the Plaintiffs' claims of outrageous conduct and negligence are based on the alleged improper closing of the Plaintiffs' business, these claims "aris[e] out of" a claim of interference with contract rights. Therefore, the outrageous conduct and negligence claims are barred by § 2680(h) to the extent they are based on the alleged improper closing of the Plaintiffs' business. Accordingly, as to these claims, to the extent that they are based on the alleged improper closing of the Plaintiffs' business, the Motion is due to be GRANTED, and

these claims are due to be DISMISSED for lack of subject matter jurisdiction.[16]

However, to the extent that the Plaintiffs' outrageous conduct and negligence claims are based on the alleged interference with the Plaintiffs' business premises, and not with the transactions or prospective transactions that take place on those premises, such claims do not "aris[e] out of" a claim of interference with contract rights. Therefore, to the extent that the outrageous conduct and negligence claims are based on interference with the Plaintiffs' business premises, in light of the court's discussion of the Plaintiffs' claim of trespass of their business premises, *supra,* these claims are not barred by § 2680(h). In addition, these claims based on interference with the Plaintiffs' business premises are not barred by the discretionary function exception for the same reasons discussed for the trespass claim. Accordingly, the United States's Motion for Summary Judgment on the negligence and outrageous conduct claims, to the extent that they are based on interference with the Plaintiffs' business premises, is due to be DENIED.

### 4. *The Negligent Supervision Claim*

█ Unlike the Plaintiffs' trespass, negligence, and outrageous conduct claims, the negligent supervision claim is not based on the alleged unconstitutional search of the Plaintiffs' business. Rather, this claim is based on the alleged negligent supervision of Brannan, the FBI laboratory, and/or government agents other than Brannan, who caused an invalid warrant to be obtained, and the FBI agents who searched and closed the Plaintiffs' business for four days. The court finds that the alleged negligent supervision "involves an element of judgment or choice," because a federal statute, regulation, policy, or constitutional law does not specifically prohibit this conduct. *See Powers,* 996 F.2d at 1124 (citations omitted). Furthermore, supervision of government agents and instrumentalities " 'is of the kind that the discretionary function exception was designed to

---

**16.** Because of this holding, the court does not need to determine whether the discretionary function exception also bars these claims.

shield,'" *see id.* at 1125 (quoting *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1273) because the conduct is "based on considerations of public policy." *See Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1273–74 (internal quotations and citations omitted). Therefore, the court finds that the claim against the United States based upon negligent supervision of government agents and/or instrumentalities is barred by the discretionary function exception. Accordingly, the Motion is due to be GRANTED as to this claim, and Plaintiffs' negligent supervision claim is due to be DISMISSED for lack of subject matter jurisdiction.[17]

### D. *The Claims Relating to the Seizure of Religious Items*

The Plaintiffs allege that FBI agents improperly seized their Bible, church newsletter, and commentary on the Bible during the search of their home. Specifically, the Plaintiffs allege that the FBI agents were not authorized by a search warrant to seize these religious items, and that such a seizure violates the Fourth Amendment. The Plaintiffs assert that this seizure supports claims against the United States of negligent and/or wanton supervision, invasion of privacy, trespass, conversion, outrageous conduct, and negligence. The United States contends that the discretionary function exception bars these claims.

None of the parties dispute that the FBI agents' seizure of religious items relates to the criminal investigation of the Plaintiffs and is within the scope of the agents' employment. Therefore, the court will consider whether the Plaintiffs' claims, relating to the seizure of religious items, are barred by the discretionary function exception.

### 1. *The Trespass, Invasion of Privacy, Conversion, Outrageous Conduct, and Negligence Claims*

■■■ The Plaintiffs' invasion of privacy, trespass, conversion, outrageous conduct, and negligence claims seemingly are each based on the alleged unlawful interference with their residence, invasion of their privacy due to the alleged interference, and/or the unlawful seizure of religious items within their residence.[18] On January 20, 1990, Judge Carroll issued a search warrant for the Plaintiffs' residence and automobiles. To obtain this warrant, the United States used an affidavit by Brannan nearly identical to the affidavit that the United States used to obtain a search warrant for the Plaintiffs' business. Brannan's affidavit was attached to the search warrant for the Plaintiffs' residence and automobiles as Attachment III. Importantly, the statements of a typewriting match in both affidavits are identical. *Compare* Brannan Affidavit in Support of Warrant to Search the Plaintiffs' Business, ¶ 39, *with* Brannan Affidavit in Support of Warrant to Search the Plaintiffs' Residence and Automobiles, ¶ 39. Moreover, Archer testified that other than the statement of a typewriting match, no probable cause to search existed. (Archer Deposition, at 103.) Thus, the court will adopt its discussion of the trespass claim based on the alleged interference with the Plaintiffs' business premises, *supra*, and will assume for purposes of this Opinion and Order only that a finder of fact could reasonably conclude that the warrant to search the

---

**17.** In so holding, the court does not need to discuss whether § 2680(h) also precludes this claim.

**18.** For the same reasons noted for the Plaintiffs' trespass claim based on alleged unlawful interference with their business premises, the court will assume that the Plaintiffs are basing their trespass claim, relating to the seizure of religious items, on alleged unlawful interference with their residence. Moreover, the court will assume that the Plaintiffs' conversion claim is only based on the alleged unlawful seizure of their religious items. *See Birmingham–Jefferson County Transit Auth. v. Arvan*, 669 So.2d 825, 828 (Ala.1995) ("To establish conversion, a plaintiff must show a

wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property.") (citation omitted). *See also* Ala.Code 1975, § 6–5–260 ("The owner of personalty is entitled to possession thereof. Any unlawful deprivation of or interference with such possession is a tort for which an action lies."). Lastly, the court will assume that the Plaintiffs' invasion of privacy, outrageous conduct, and negligence claims are each based, in part, on the alleged unlawful interference with their residential premises, invasion of their privacy due to the alleged interference, and/or the unlawful seizure of their religious items.

Plaintiffs' residence and automobiles was invalid for lack of probable cause due to a *Franks* violation.

The United States does not contend that a warrantless search of the Plaintiffs' residence and automobiles was constitutional, and the court, upon independent review, has not found any basis justifying a warrantless search. As with the Plaintiffs' trespass claim based on interference with their business premises, a material issue of fact exists whether FBI agents had discretion to search the Plaintiffs' residence.

Furthermore, a seizure conducted without a valid warrant is "'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993) (quoting *Thompson v. Louisiana*, 469 U.S. 17, 19–20, 105 S.Ct. 409, 410, 83 L.Ed.2d 246 (1984) (per curiam)). Assuming that the search warrant for the Plaintiffs' residence and automobiles was invalid for lack of probable cause due to a *Franks* violation, neither has the United States contended, nor has the court, upon independent review, found any basis for justifying the alleged warrantless seizure of the Plaintiffs' religious items. Therefore, a material issue of fact exists whether FBI agents had discretion to enter the Plaintiffs' residence and seize their religious items. For this reason, a material issue of fact also exists whether the Plaintiffs' invasion of privacy, trespass, conversion, outrageous conduct, and negligence claims are barred by the discretionary function exception. Accordingly, the United States's Motion for Summary Judgment on these claims is due to be DENIED.

### 2. *The Negligent and/or Wanton Supervision Claim*

■ In contrast, the Plaintiffs' negligent and/or wanton supervision claim is not based on the alleged unconstitutional search of the Plaintiffs' residence or seizure of religious items therein. Instead, this claim is based on the alleged negligent and/or wanton supervision of Brannan, the FBI laboratory, and/or government agents other than Brannan, who caused an invalid warrant to be obtained, and the FBI agents who searched the Plaintiffs' residence and seized religious items therein. For the same reasons stated previously in regard to similar claims regarding the search of the business, the court finds that the claim of negligent and/or wanton supervision of government agents and/or instrumentalities is barred by the discretionary function exception. Accordingly, the Motion is due to be GRANTED as to this claim, and this claim is due to be DISMISSED for lack of subject matter jurisdiction.

### E. *The Claims Relating to Inappropriate Statements*

The Plaintiffs allege that during interrogation FBI agents told the Plaintiffs that they would get the electric chair if they did not admit their involvement in the mail bombings. The Plaintiffs further allege that one or more FBI agents told Mr. O'Ferrell that FBI agents had kept him "in the sights of their high-powered rifles" before they first approached him in January 1990. The Plaintiffs also allege that during interrogation FBI agents told Mrs. O'Ferrell that Mr. O'Ferrell admitted their involvement in the mail bombings and that she better do the same. Based on these alleged inappropriate statements, the Plaintiffs appear to be bringing an outrageous conduct claim and possibly other claims as well.[19] The United States

**19.** The Plaintiffs' First Amended Complaint is very poorly drafted in that it sets out facts in one section and in another section lists numerous tort claims being brought under the FTCA without applying specific facts to any of those claims. In the Plaintiffs' Final Submission in Opposition to the Motion for Summary Judgment, the Plaintiffs assert that the alleged making of inappropriate statements is "proscribed by clearly established constitutional law … as well as the FBI's own guidelines, rules and policies." The United States apparently relies on this assertion in surmising that the Plaintiffs have only brought claims of constitutional and federal law violations.

However, in their Brief in Support of Plaintiffs' Response to Motion for Summary Judgment, the Plaintiffs assert that the alleged inappropriate statements are sufficient to state a claim for outrageous conduct in Alabama, a claim listed in the First Amended Complaint, albeit with no facts expressly stated in support thereof. In view of this assertion, the discussion of the alleged

contends that the discretionary function exception bars the Plaintiffs' claims relating to the alleged inappropriate statements. Alternatively, the United States contends that the Plaintiffs have only brought claims, relating to these alleged statements, of constitutional and federal law violations, and, as such, have failed to assert an actionable claim under the FTCA..

It is undisputed that inappropriate statements by FBI agents allegedly made to the Plaintiffs relate to the criminal investigation of the Plaintiffs and are within the scope of the agents' employment. Therefore, the court will consider whether the Plaintiffs' claims are barred by the discretionary function exception.

▆▆▆ With respect to whether the FBI agents had discretion to make the alleged electric chair and high-powered rifles statements, the Plaintiffs cite Archers testimony that FBI policy prohibits an agent from threatening a person being interrogated with physical harm. (Archer Deposition, at 29, 30, 35.)[20] In fact, § 7–2.1 of the FBI's *Legal Handbook for Special Agents* ("the Handbook") declares that "It is the policy of the FBI that no attempt be made to obtain a statement by force, threats, or promises." Section 7–2.2 of the Handbook observes that

> Courts in holding a statement involuntary have looked upon the following situations or characteristics as being inherently coercive without considering whether the suspect's individual will was overborne:
>
> (1) Physical abuse, or the threat of such abuse;
>
> (2) Extended period of incommunicado interrogation;
>
> (3) Unwillingness to permit the accused access to a lawyer, family or friends, especially when such individuals made efforts to contact the subject;

> (4) Severe physical conditions under which an accused is interrogated.

All of the above situations are merely illustrative. It is not possible to predict what given situation or set of circumstances will find a court labeling the episode as inherently coercive.

The Handbook does not define the term "threats," as used in § 7–2.1, or the phrase "threat of [physical] abuse," as used in § 7–2.2. Such terms are vague and do not specifically prohibit statements similar to the alleged electric chair and high-powered rifles statements. Furthermore, the qualifying language in § 7–2.2 that the situations listed are "merely illustrative" and that "[i]t is not possible to predict what given situation or set of circumstances will find a court labeling the episode as inherently coercive" provides more support for the finding that § 7–2.2's observation concerning "threat of [physical] abuse" does not specifically prohibit the type of inappropriate statements allegedly made here.

Notably, *Webster's Ninth New Collegiate Dictionary* (1991) defines the term "threat" as "an expression of intention to inflict evil, injury, or damage" or as "an indication of something impending." *Id.* at 1228–29. The alleged electric chair statements invariably refer to the possible consequence for a person convicted of the mail bombings who does not plea bargain. Such a consequence would result after a judicial proceeding and would not be "inflicted" by the FBI. Moreover, the alleged high-powered rifles statement is an observation of something that happened in the past, not "an expression of intention to inflict" or of something "impending." Therefore, these statements do not fall within the plain meaning of the term "threat" as used in the Handbook.

Additionally, the United States distinguishes Archer's statement that FBI policy

inappropriate statements in the Plaintiffs' Final Submission appears to be focused solely on the inapplicability of the discretionary function exception and not on any specific constitutional or federal law causes of action. Therefore, the court finds that the Plaintiffs have brought an outrageous conduct claim and possibly other claims based on alleged inappropriate statements.

**20.** Although Archer testified that FBI regulations prohibit such conduct, he testified later in his deposition that he was referring to FBI policy. (Archer Deposition, at 53.) To be sure, the court, upon individual review, could find no regulation specifically prohibiting such conduct.

prohibits an agent from threatening a person being interrogated with physical harm. Archer testified that he did not know whether FBI policy prohibits an agent from threatening physical harm by someone other than the agent to a person being interrogated. (*Id.* at 35.) Archer also testified that he has never seen any specific policy prohibiting an FBI agent from telling a person being interrogated that the person would suffer "some consequence" if the person did not admit guilt.[21] Archer further testified that such conduct would not necessarily be inappropriate. (*Id.* at 28–29.) Moreover, Archer testified that he sees nothing wrong with an FBI agent telling a person being interrogated that: "'If you don't tell us that you did this and we prove through other means that you did it, you're liable to wind up in a maximum security prison. If you confess, perhaps you will wind up in a lesser institution.'" (*Id.* at 36.) Furthermore, Archer testified that the alleged high-powered rifles statement would not violate any FBI policy. (*Id.* at 110–11.)

With respect to whether the FBI agents had discretion to lie to Mrs. O'Ferrell that Mr. O'Ferrell admitted their involvement in the mail bombings and that she better do the same, § 7–2.3 of the Handbook notes, in part, that "Some of the factors considered by courts [in determining whether a statement is voluntary] are: . . . [t]rickery, ruse, [and] deception." Section 7–2.3 further notes that "[T]he presence of any one or more of the factors mentioned above will not necessarily make a statement involuntary. They are conditions looked at by the courts in examining the 'totality of circumstances' under which a statement was obtained." Based on the fact that § 7–2.3 lists trickery, ruse, and deception as "factors" that "will not necessarily make a statement involuntary," § 7–2.3 does not specifically prohibit the alleged lie made to Mrs. O'Ferrell.

Archer testified that the Handbook provisions encompass the entire FBI policy concerning interrogations. (Archer Deposition, at 54.). Thus, for the reasons stated above, FBI policy did not specifically prohibit

agents from making any of the alleged inappropriate statements.

In addition, neither the Plaintiffs nor the United States cite any federal statute, regulation, or constitutional law that specifically prohibits FBI agents from making the alleged inappropriate statements, and the court has not located any specific prohibition upon independent review. Consequently, the alleged making of these statements "involves an element of judgment or choice," and was within the agents' discretion. *See Powers,* 996 F.2d at 1124 (citations omitted). This finding is consistent with the many court decisions holding that how and under what circumstances law enforcement officers conduct an investigation involve discretion. *See e.g., Horta,* 4 F.3d at 21; *Georgia Cas. & Sur. Co.,* 823 F.2d at 263; *Pooler,* 787 F.2d at 871.

The court also finds that the decision to allegedly make the inappropriate statements "is of the kind that the discretionary function exception was designed to shield." *See Powers,* 996 F.2d at 1125 (quoting *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273). Assuming FBI agents made the alleged inappropriate statements, the decisions by those agents to make these statements were "based on considerations of public policy." *See Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273–74 (1991) (internal quotations and citations omitted). As expounded by the Ninth Circuit, "Investigations by federal law enforcement officers . . . clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation." *Sabow v. United States,* 93 F.3d 1445, 1453 (9th Cir.1996). *See also Flax v. United States,* 847 F.Supp. 1183, 1190–91 (D.N.J.1994). Moreover, the alleged decisions by the agents to make inappropriate statements to the Plaintiffs were likely guided by the agents' objective to have the Plaintiffs tell the truth concerning any involvement by them in the mail bombings. Such an objective correlates to the public policy goal of

---

**21.** Although Archer testified concerning not seeing any prohibition in FBI regulations, he testified later in his deposition that he was referring to not seeing any prohibition in FBI policy.

(Archer Deposition, at 53.) To be certain, the court, upon individual review, could not find any regulation specifically prohibiting such conduct.

ensuring public safety and punishing those responsible for the mail bombings. The fact that making the alleged inappropriate statements may have been negligent, wrongful, intentional, or an abuse of discretion does not make the discretionary function exception inapplicable. *See* 28 U.S.C. § 2680(a); *Dalehite*, 346 U.S. at 33–34, 73 S.Ct. at 966–67.

■ For all these reasons, the court finds that the Plaintiffs' outrageous conduct claim and any other claims based on the alleged inappropriate statements are barred by the discretionary function exception. Accordingly, the Motion is due to be GRANTED as to these claims, and these claims are due to be DISMISSED for lack of subject matter jurisdiction.[22]

### F. The Claim Relating to the Reward

■ As stated previously, the Plaintiffs allege that the United States offered a $500,-000.00 reward to the public for information leading to the arrest and/or conviction of the person or persons responsible for the mail bombings. The Plaintiffs allege that Mrs. O'Ferrell informed the United States that she and/or Mr. O'Ferrell had sold a typewriter to Moody or Moody's wife.[23] The Plaintiffs further allege that Mrs. O'Ferrell made herself available to testify to this information at Moody's trial. The Plaintiffs allege that the United States represented to the Plaintiffs that Mrs. O'Ferrell's information satisfied the terms of the reward offer. The Plaintiffs allege, however, that the United States reneged on giving the Plaintiffs the reward money. Based on these allegations, in addition to their breach of contract claim discussed earlier, the Plaintiffs claim that "the Government committed fraud by misrepresenting a material fact to [Mrs.] O'Ferrell that she justifiably relied upon to her

damage." The United States contends that this tort claim is barred by § 2680(h).

Although the Plaintiffs allege that the United States made misrepresentations to the Plaintiffs, the United States, as an entity, could only have acted through one or more agents in making the misrepresentations. It is undisputed that the alleged misrepresentations relate to the mail bombings investigations and are within the scope of a government agent's employment. Therefore, the court will consider whether the Plaintiffs' fraud claim is barred by § 2680(h).

Section 2680(h) bars any claim "arising out of misrepresentation." 28 U.S.C. § 2680(h). In discussing § 2680(h)'s misrepresentation exception, the Supreme Court stated that "[T]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Neal*, 460 U.S. at 296, 103 S.Ct. at 1093. Here, the Plaintiffs fraud claim is based on reliance on such a communication. Therefore, the Plaintiffs' fraud claim "aris[es] out of" misrepresentation and is barred by § 2680(h). Accordingly, the Motion is due to be GRANTED on this claim, and the Plaintiffs' fraud claim is due to be DISMISSED for lack of subject matter jurisdiction.

### G. The Claim Relating to the Telephone Call

■ The Plaintiffs allege that while Mr. O'Ferrell was at the business when it was being searched, he received a telephone call from Mrs. O'Ferrell, who was away from the business. The Plaintiffs allege that FBI agents would only allow the Plaintiffs to speak to each other while agents listened in on the conversation on another telephone extension. Based on this allegation, the

22. Pursuant to this holding, the court does not need to examine the United States's other contention—that the Plaintiffs have only brought claims of constitutional and federal law violations based on the alleged inappropriate statements. Suffice it to say, however, that "[28 U.S.C.] § 1346(b) does not provide a cause of action for [a constitutional tort] claim." *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994). Therefore, to the extent that the Plaintiffs have brought claims of constitutional and federal law

violations, these claims are not actionable under the FTCA.

23. The First Amended Complaint states that Mrs. O'Ferrell informed the United States that the Plaintiffs sold a typewriter to Moody. However, the Plaintiffs' Final Submission in Opposition to the Motion for Summary Judgment states that Mrs. O'Ferrell informed the United States that she sold a typewriter to Moody's wife.

Plaintiffs bring a tort claim against the United States for invasion of privacy. The United States contends that the discretionary function exception bars this claim.

It is undisputed that the alleged monitoring of the Plaintiffs' telephone conversation by FBI agents was related to the criminal investigation of the Plaintiffs and is within the scope of the agents' employment. Therefore, the court will consider whether the Plaintiffs' invasion of privacy claim is barred by the discretionary function exception.

The Plaintiffs baldly assert that the discretionary function exception does not apply here because the United States "had absolutely no discretion under the law to listen in on the Plaintiffs' telephone conversation." The Plaintiffs do not support this assertion with citation to any law, regulation, or policy. Notwithstanding the Plaintiffs' assertion, the court finds that there are two potentially applicable bases of law limiting the discretion of FBI agents to listen in on the Plaintiffs' telephone conversation, both of which are grounded on the assumption that the search of the Plaintiffs' business was unconstitutional.

The first potentially applicable basis is the Fourth Amendment's prohibition against "unreasonable searches and seizures." *See* *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967) (holding that government monitoring of the plaintiffs telephone conversation "constituted a 'search and seizure' within the meaning of the Fourth Amendment"). As declared by the Supreme Court, "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986) (quoting *Katz,* 389 U.S. at 360, 88 S.Ct. at 516 (Harlan, J., concurring)). Importantly, "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz,* 389 U.S. at 351, 88 S.Ct. at 511 (citations omitted). Here, assuming that FBI agents monitored the Plaintiffs' telephone conversation, the Plaintiffs conversed knowing that their conversation was being monitored. Therefore, the Plaintiffs did not have a "'constitutionally protected reasonable expectation of privacy'" in their conversation.

The second potentially applicable basis of law limiting the FBI agents' discretion to monitor the Plaintiffs' telephone conversation is Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. § 2510 *et seq.* Title III prohibits the interception of "a wire, oral, or electronic communication" except in accordance with specific procedures set forth therein. 18 U.S.C. § 2511(1). However, Title III provides that it is not unlawful "for a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . . one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). Consent can be shown where one of the parties knew that the call would be monitored. *See* *United States v. Davis,* 799 F.2d 1490, 1492 (11th Cir.1986) (stating that the burden of proving consent "can be met by circumstantial evidence showing that an informant placed the telephone call knowing the call would be recorded") (citations omitted).

Here, as stated, assuming that FBI agents monitored the Plaintiffs' telephone conversation, the Plaintiffs knew, before they conversed, that the FBI agents would do this. Therefore, even assuming that the FBI agents who allegedly intercepted their telephone call did not follow the proper procedures set forth in Title III, the agents' alleged interception would not be prohibited by Title III because, by talking with the knowledge that agents were listening, the Plaintiffs consented to such interception. Consequently, even if the search of the Plaintiffs' business was unconstitutional, the FBI agents had discretion to monitor the Plaintiffs' telephone conversation.

In addition, the court finds that the decision to monitor the Plaintiffs' telephone conversation "is of the kind that the discretionary function exception was designed to shield." *See* *Powers,* 996 F.2d at 1125 (quoting *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273). Assuming that the FBI agents intercepted the Plaintiffs' telephone conversation during the search of their business, the deci-

sion to make the interception was "based on considerations of public policy." *See Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273–74 (1991) (internal quotations and citations omitted). The alleged interception occurred during the course of a search. Furthermore, the court accepts the uncontested assertion by the United States that the interception was motivated by the agents' concerns about the Plaintiffs' possible flight, the agents' own safety, and the destruction of evidence. Therefore, the court finds that the Plaintiffs' invasion of privacy claim based on the alleged monitoring by FBI agents of the Plaintiffs' telephone conversation is barred by the discretionary function exception. Accordingly, the Motion is due to be GRANTED as to this claim, and this claim is due to be DISMISSED for lack of subject matter jurisdiction.

## VI. *THE BIVENS ACTION*

The First Amended Complaint alleges so called *"Bivens* Actions" against unnamed federal agents. The United States moves for summary judgment to the extent that any *Bivens* claim is asserted against it.

In *Bivens,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619, the Supreme Court held that a remedy should be available against federal officials who violate another's constitutional rights. The remedy for such a constitutional violation, however, is limited to a *"Bivens* Action" against the individual federal actors, and not against the United States. *McCollum v. Bolger,* 794 F.2d 602, 608 (11th Cir.1986) (citing *Bivens,* 403 U.S. at 397, 91 S.Ct. at 2005), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987). *See also Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 484–85, 114 S.Ct. 996, 1005, 127 L.Ed.2d 308 (1994) (holding that a *Bivens* action could not be brought against federal agencies). While the FTCA allows certain state law tort claims to be asserted against the United States, there is no right of action against the United States for constitutional violations.

Consequently, the Motion is due to be GRANTED, and the Plaintiffs' *Bivens* claims DISMISSED to the extent that they may be asserted against the United States, for lack of subject matter jurisdiction.

The court will not address the United States's arguments concerning the statute of limitations and qualified immunity. These are matters which may be raised by the individual defendant, Brannan, when he is added by amendment, as authorized by a separate order entered on this day.

## VII. *CONCLUSION*

The court has had considerable difficulty in analyzing this case because of the "shotgun approach" taken in the Complaint and First Amended Complaint. When the Complaint is amended again, as authorized by separate order, it is expected that the Plaintiffs will articulate each of their separate claims with clarity.

As discussed above, this court does not have jurisdiction over several of the Plaintiffs' claims. The breach of contract claim relating to the reward must be filed in the United States Court of Federal Claims, rather than in this court. The claims based on use of the media, interference with business, negligent and/or wanton supervision, inappropriate statements, fraud, and the telephone call are claims from which the United States is immune on the basis of sovereign immunity, because of specific exceptions to the waiver of that immunity contained in the Federal Tort Claims Act.

The claims against the United States which survive the Motion for Summary Judgment and on which the Plaintiffs will be allowed to proceed are those for trespass, outrageous conduct, and negligence based on trespass on the Plaintiffs' business premises and home, invasion of privacy based on trespass on the Plaintiffs' home, and those for invasion of privacy, conversion, outrageous conduct, and negligence relating to the seizure of religious items. These claims may proceed because the Plaintiffs have established that a genuine issue of fact exists as to whether the search warrants were obtained by intentionally or recklessly presenting false affidavits to the issuing magistrate judge as evidence of probable cause. Our constitution does not permit such conduct by our government and a violation of this constitutional

guarantee may give rise to state law claims against the United States.

The court has, of course, made no determination on the merits of the Plaintiffs' surviving claims; it has merely allowed Plaintiffs to go forward. The Plaintiffs will have the burden of proving these claims at a trial. If they do prove that the searches were conducted in violation of the Plaintiffs' constitutionally guaranteed protection against unreasonable searches and seizures, then the United States may beheld liable for damages.

## VIII. ORDER

For the foregoing reasons, it is hereby ORDERED as follows:

1. The United States' Motion for Summary Judgment is DENIED on the following claims: trespass, outrageous conduct, and negligence based on trespass on the Plaintiffs' business premises and home; invasion of privacy based on the Plaintiffs' home; and invasion of privacy, trespass conversion, outrageous conduct, and negligence, relating to the seizure of religious items.

2. The United States' Motion for Summary Judgment is GRANTED as to all other claims, and all other claims are DISMISSED for lack of subject matter jurisdiction.