Earl V. HARTWIG, et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 1:92 CV 1315.

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 10, 1999.

Walter P. Bubna, Cleveland, OH, Robert C. Seldon, Washington, DC, Sarah Levitt, Washington, DC, for plaintiffs.

Marie Louise Hagen, Washington,DC, United States Department of Justice, Steven B. Snyder, Washington, DC, United States Department of Justice, for defendant.

## ORDER

OLIVER, District Judge.

This action arises out of the April 19, 1989, explosion aboard the U.S.S. Iowa, in which U.S. Naval Petty Officer Clayton Hartwig, along with forty-six of his fellow sailors, was killed. The Plaintiffs in this action are Mr. Earl Hartwig and Mrs. Evelyn Hartwig, Clayton's parents, and Ms. Kathleen Hartwig Kubicina and Ms. Cynthia Werthmuller, Clayton's sisters. Plaintiffs seek to recover damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.,* alleging that the Defendant United States intentionally and negligently inflicted emotional distress on them by misconducting the investigation into the explosion on the U.S.S. Iowa. The United States has moved to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, arguing that the Plaintiffs' claims of emotional distress arise out of defamation, an intentional tort for which the United States has not waived sovereign immunity. (*See* Doc. No. 234).

This case was originally assigned to Judge Paul Matia. On May 14, 1993, Judge Matia denied a motion by the United States to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction. No

discovery had been completed as of this date, and Judge Matia determined that it was unclear from the face of the Complaint that Plaintiffs' claims of emotional distress were dependent on defamatory statements made by the government about Clayton Hartwig. This case was reassigned to former Chief Judge George White on November 23, 1993, and thereafter was referred by Judge White to Magistrate Judge David Perelman on February 11, 1994. On March 14, 1997, Defendant United States moved again, after the completion of discovery, to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction. Magistrate Judge David Perelman issued a Report and Recommendation on January 26, 1999, recommending that Defendant's motion be granted. Magistrate Judge Perelman determined that several years of discovery had revealed that defamation was essential to Plaintiffs' claims and therefore their claims were barred by sovereign immunity. On February 8, 1999, this case was reassigned from the docket of Judge White to the docket of this court.

Plaintiffs filed their objections to the Report and Recommendation on February 9, 1999, and on that same date, moved for a sixty-day extension of time to file a supplemental memorandum in further support of their objections. Defendant United States filed its response to Plaintiffs' objections on February 26, 1999. On April 20, 1999, Plaintiffs' motion for a sixty-day extension was granted as moot as the sixty days had already expired. On April 21, 1999, Plaintiffs filed a Supplemental Memorandum in Support of their Objections to the Report and Recommendation. Plaintiffs terminated their counsel in or around May of 1999. Thereafter, Plaintiffs' counsel filed a motion for leave to withdraw on May 26, 1999, and by letter dated May 28, 1999, requested that Plaintiffs be allowed an additional sixty days to file further supplemental objections to the Magistrate Judge's Report and Recommendation. This court granted the motion of Plaintiffs' counsel for leave to withdraw on July 2, 1999. By that same order, Plaintiffs' new counsel was given forty-five days to enter objections to the Report and Recommendation. On August 2, 1999, Plaintiffs' new counsel filed their Supplemental Memorandum in Support of Plaintiffs' Objections to Magistrate Judge's Report and Recommended Decision ("Plaintiffs' Supplemental Objections"). Defendant United States responded on September 23, 1999, and Plaintiffs submitted their reply on September 27, 1999.

The court has reviewed all of the relevant documents in this matter, and in so doing, has decided to adopt the Magistrate Judge's Report and Recommendation (Doc. No. 260). Therefore, the United States' Motion to Dismiss (Doc. No. 234) is granted.

## I. FACTS

On April 19, 1989, while the U.S.S. Iowa was engaged in training exercises off the coast of Puerto Rico, a series of explosions occurred in Turret II of the ship, causing the deaths of forty-seven servicemen working in that turret. U.S. Naval Petty Officer Clayton Hartwig was on board the U.S.S. Iowa, working in the center gun of Turret II, when the explosion occurred. He was among those servicemen killed in the blast.

From the beginning, Clayton Hartwig was a suspect in the Navy's investigation into the cause of the explosion. In connection with the investigation, the Naval Investigative Service ("NIS") conducted interviews with the Plaintiffs, searched Clayton Hartwig's bedroom at his parents' home, and made copies of documents, correspondence and photographs found in the Hartwigs' home.

At the heart of Plaintiffs' complaint are their allegations concerning the government's release of information regarding the investigation to the media, including the results of interviews with Plaintiffs, friends, acquaintances and shipmates of Clayton Hartwig. The allegedly "unverified and untrue" information released to the media by the government included:

a.) That Clayton Hartwig committed suicide by causing the explosion, stating that he was despondent because a "special relationship" between Hartwig and Kendall Truitt, a shipmate, had "gone sour," thus implying a homosexual relationship.

b.) That Clayton Hartwig caused the explosion because of a murder-suicide pact.

Complaint at ¶ 23. A report of the investigation was also released by the Navy and Rear Admiral Richard D. Milligan. The contents of this report were discussed in a press conference held by Milligan which was broadcast by the national media. In the report, Milligan stated that Clayton Hartwig had caused the explosion and had "stage[d] his death in such a fashion that he hoped it would appear an accident." *Id.* at ¶ 29. The majority of Plaintiffs' lengthy brief in opposition to the United States' Motion to Dismiss details numerous other leaks of information to the media regarding the investigation.

Plaintiffs also claim that they were injured by acts other than the dissemination of information to the public regarding Clayton Hartwig's status as a suspect in the investigation. For example, they claim they were injured when the Navy sent a letter to each family member stating that Clayton was suspected of causing the explosion and when the Navy privately briefed the family members about the results of the investigation and its belief that Clayton was the cause of the explosion. Finally, Plaintiffs claim that the Navy fabricated a videotape which it showed them in their own home and which was "designed to convince them that their son had set the explosion." Pls.' Supplemental Objections at 2.

## II. INTRODUCTION

The doctrine of sovereign immunity cloaks the United States with immunity from suits to which it has not consented. It is a jurisdictional bar that operates when one has brought a suit against the United States for money or property damages or some form of coercive injunctive relief. A variety of explanations and justifications for the doctrine have been advanced over the years, including that sovereign immunity is necessary to protect the national treasury, that the Government would not be able to perform its duties properly if it were subjected to suit and that an *ultra vires* act of a public official is not the act of his government. *See* Lester S. Jayson and Robert C. Longstreth, *Handling Federal Tort Claims: Administrative and Judicial Remedies,* § 2.01 at 2–5 (1999); Willoughby on the Constitution of the United States § 915, at 1422–1423 (2d ed.1929). To those with claims that would be successful if brought against a private party, sovereign immunity sometimes produces harsh and seemingly unjust results. As has been explained,

[W]hatever its rationale, . . . [the] effect [of the doctrine] for over 150 years was to give the United States Government a privileged position of legal irresponsibility for the torts of its employees, and this at the expense of the innocent victims of those torts. Throughout this period, those who suffered damage because of the negligence of an employee of the United States had the dismal choice of a suit against the employee personally—a defendant of doubtful financial resources—or a petition to Congress to grant a private relief measure which was a tortuous and frequently hopeless route to recovery.

Lester S. Jayson and Robert C. Longstreth, *Handling Federal Tort Claims: Administrative and Judicial Remedies,* § 2.01 at 2–5 (1999).

In 1946, the FTCA was enacted to ameliorate the injustice sometimes caused by the inability to sue the United States on claims barred by sovereign immunity. It provides that sovereign immunity is waived as to:

claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Gov-

ernment while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). However, at the same time Congress provided this waiver of sovereign immunity, it also enacted exceptions to such waiver. At issue herein is 28 U.S.C. § 2680(h), the "intentional tort" exception to the FTCA. It provides that immunity is not waived as to:

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights.

Again, to one with a claim against the United States for one of the excepted torts in § 2680(h), it likely seems unjust that his or her claim is barred by the doctrine of sovereign immunity. While this court may agree that such a result would indeed be harsh, it is not for the court herein to weigh the pros and cons of the doctrine or even to set forth a justification for the intentional tort exception. This court's duty is simply to evaluate Plaintiffs' claims to determine whether they survive § 2680(h). At the heart of this dispute is whether the claims alleged by the Plaintiffs, while labeled as ones for intentional or negligent infliction of emotional distress, are, in fact, claims arising out of defamation, an intentional tort for which the United States has not waived its sovereign immunity. Even if all of Plaintiffs' allegations regarding the government's conduct are true, if their claims are in truth ones for defamation, this court does not have jurisdiction to hear them, no matter how badly Plaintiffs may have been injured by the conduct of a government employee.

Under the FTCA, the burden of "invoking jurisdiction by a pleading that facially alleges matters not excepted by § 2680" falls upon Plaintiffs. *Carlyle v. United States,* 674 F.2d 554, 556 (6th Cir.1982). Once they have done so, it is then the government's burden to prove the applicability of one of the exceptions in § 2680(h). *Id.* If they do so successfully, then this court must dismiss the case for lack of subject matter jurisdiction.

## III. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### A. *Standard of Review*

In determining what standard to apply to the United States' motion to dismiss for lack of subject matter jurisdiction, the Magistrate Judge explained that the United States' motion puts forth a quasi-factual attack to this court's jurisdiction in that it "is premised upon the allegations in the complaint as supplemented by undisputed facts in the record." R & R at 11. He also noted that where subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in a case, it is within a court's prerogative to convert a motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment. *See Bell v. United States,* 127 F.3d 1226, 1228 (10th Cir. 1997) (in an FTCA context, converting motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment). According to the Magistrate Judge:

> It is the opinion of this Court that whether this motion is considered as a motion to dismiss under Rule 12(b)(1) or 12(b)(6) or as a motion for summary judgment under Rule 56, the same outcome would ensue. The critical facts relied upon by plaintiffs as calling for denial of dismissal for lack of subject matter jurisdiction are not in dispute. Instead, it is the legal interpretation attendant to those facts that is questioned herein. Consequently, this Court perceives no difference in outcome whether the undisputed facts offered to supplement the complaint are deemed as true and the allegations are considered in favor of the non-moving party, as would be required under Rule 12(b)(1), or

whether the undisputed facts, when viewed in the light most favorable to the non-moving party, entitle the moving party to judgment as a matter of law, as would call for summary judgment under Rule 56.

R & R at 12.

In light of the foregoing and the fact that the FTCA provides the basis for jurisdiction in this case as well as the cause of action against the United States, the Magistrate Judge applied the standard pertinent to a motion for a summary judgment. For these same reasons, this court will also treat Plaintiffs' motion as one for summary judgment. Federal Rule of Civil Procedure 56(c) sets forth the standard for summary judgment: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law...." In ruling on a motion for summary judgment, this court is required to view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## B. *The Plaintiffs' Claims*

In their Memorandum in Opposition to United States' Motion to Dismiss, Plaintiffs argued that seven categories of conduct by the government, separate and distinct from the tort of defamation, formed the basis of their claims:

1. The Government Blatantly Violated the Appointing Order by Blaming Clayton Hartwig

2. The Government Leaked Confidential Information to the Media

3. The Government Conducted a Sham Investigation

4. The Government Conducted an Illegal Search and Seizure at the Hartwig Home

5. The Government Selectively Used Evidence

6. The Government Suppressed Evidence

7. The Government Falsified Evidence

Ultimately, the Magistrate Judge found that six of the seven categories of alleged conduct were barred by § 2680(h) because they arose out of defamation.[1] Thus, before addressing each category, the Magistrate Judge discussed the analysis courts apply to claims that "aris[e] out of" an excepted cause of action in § 2680(h). In doing so, the Magistrate Judge cited *Metz v. United States*, 788 F.2d 1528 (11th Cir. 1986). Relying on Supreme Court precedent regarding the proper interpretation of the words "arising out of" in § 2680(h), the *Metz* court determined that "a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless

---

1. The Magistrate Judge determined that category 4—"The Government Conducted an Illegal Search and Seizure at the Hartwig Home"—is not actionable because a cause of action brought under the FTCA cannot be based on the violation of a constitutional right. Report and Recommendation ("R & R") at 27 (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 477–478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). The Magistrate Judge further held

that Plaintiffs had failed to exhaust their administrative remedies with respect to this claim as they had not presented it to the appropriate federal agency prior to filing the instant action. Plaintiffs do not object to the Magistrate Judge's determination of this issue. This court agrees with the Magistrate Judge's analysis of this claim and adopts the Report and Recommendation on this issue.

be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim." *Id.* at 1534 (quoting *Block v. Neal*, 460 U.S. 289, 297, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983)) and (citing *Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) and *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985)). According to the Eleventh Circuit, the critical issue in determining whether a claim actually "arises out of" an excepted cause of action is the governmental conduct in question, not necessarily the injury that results from that conduct.

In determining whether Plaintiffs' claim is one arising out of defamation, the Magistrate Judge first explained that the pertinent comparison is between Plaintiffs' claims and " 'the traditional and commonly understood definition' of [defamation]," rather than between Plaintiffs' claims and the definition of defamation in any particular state. R & R at 15 (quoting *O'Ferrell v. United States*, 968 F.Supp. 1519, 1528 (M.D.Ala.1997)) (citations omitted). The traditional and commonly understood definition of defamation is "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence; and (d) [certain types of harm]." R & R at 15 (quoting Restatement (Second) of Torts, § 558 (1977)).

The Magistrate Judge then analyzed two cases, *Kugel v. United States*, 947 F.2d 1504 (D.C.Cir.1991), and *O'Ferrell*, 968 F.Supp. 1519, which he felt to be germane to the determination of whether the claims raised by Plaintiffs arise out of the libel and slander exception in § 2680(h). In *Kugel*, the plaintiff alleged that as a result of the FBI's negligent execution of its investigation of his business practices, he was forced to declare bankruptcy and suffered stress-related seizures. *Kugel*, 947 F.2d at 1505. During the course of the investigation, the FBI had provided several statements concerning the investigation to the media. Upon scrutinizing

the cause of the plaintiff's injury as opposed to the name he had placed on his cause of action, the court held that Kugel's claim was barred under the FTCA because it arose out of defamation. *Id.* at 1507 (citing *Block v. Neal*, 460 U.S. 289, 297, 103 S.Ct. 1089, 1093, 75 L.Ed.2d 67 (1983))). According to the court, "the cause of Kugel's injury was not the FBI's execution of the investigation but its dissemination of information associated with the investigation." *Id.* (citing *Art Metal— U.S.A. v. United States*, 753 F.2d 1151, 1154–1155 (D.C.Cir.1985)) ("[A] litigant may not substitute the name of a cause of action not included in § 2680(h) for one that is included where the alleged breach of duties in the two claims is identical.").

In *O'Ferrell*, the plaintiff had initially been a suspect in an investigation of mail bombings. He and his wife brought several claims against the United States, including claims of negligence, negligent supervision, invasion of privacy and outrageous conduct by FBI agents and governmental officials in their investigation. These claims were based on allegations that the agents and officials made misleading statements through leaks and disclosures to the media regarding the plaintiff's status as a suspect in the investigation. Reasoning that the plaintiffs' claims "resound[ed] in the heartland of the tort of defamation: the injury is to reputation; the conduct is the communication of an idea, either implicitly or explicitly," the court dismissed all of the plaintiffs' claims relating to the use of the media. According to the court, it did not have subject matter jurisdiction over these claims because the conduct the plaintiffs complained of arose out of libel or slander and was therefore barred by § 2680(h).

### (1.) *Category 1*

### *The Government's Alleged Violation of the Appointing Order*

The Magistrate Judge then addressed Plaintiffs' allegation that the government violated the Appointing Order's prohibition against expressing "opinion[s] . . . concern-

ing the line of duty and misconduct status of deceased members" when Rear Admiral Milligan "opined that 'the wrongful intentional act that caused this incident was most probably committed by GMG2 Clayton M. Hartwig.'" [2] Pls.' Mem. in Opp. to United States' Motion to Dismiss at 70. He concluded that this claim was without merit for several reasons. First, the Magistrate Judge determined that Plaintiffs' claim plainly arises from defamation in that they acknowledge that "the fact that Clayton Hartwig was identified 'as the individual who most probably caused the explosion'" was the cause of their harm. R & R at 18. In other words, Plaintiffs'claim relies upon an allegedly false communication to a third party which harmed the reputation of Clayton Hartwig, satisfying each element of defamation. *Id.* at 19. Next, the Magistrate Judge noted that Milligan could have been attempting to comply with the Appointing Order's mandate that he "investigate all facts and circumstances surrounding the explosion on board USS Iowa *including the cause of the explosion* ...." when he made his statement. *Id.* (quoting Appointing Order) (emphasis added in R & R). Finally, the Magistrate Judge determined that the Appointing Order is not a regulation and does not create any legal obligations or rights, the violation of which could provide a basis for a claim. *Id.* at 19–20 (citing *Schweiker v. Hansen,* 450 U.S. 785, 789–790, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981)); *Kugel,* 947 F.2d at 1507–1508; *Jacobo v. United States,* 853 F.2d 640, 641 (9th Cir.1988); *Brock v. Cathedral Bluffs Shale Oil,* 796 F.2d 533, 538–539 (D.C.Cir.1986); and *American Mining Congress v. Marshall,* 671 F.2d 1251, 1262–1263 (10th Cir.1982).

### (2.) *Category 2*

#### *The Government Leaked Confidential Information to the Media*

The Magistrate Judge next addressed the Plaintiffs' claim that the government intentionally and negligently caused them severe emotional distress by leaking confidential information to the media. Plaintiffs claim that the leak of allegedly unverified and untrue information regarding such things as Clayton's alleged homosexual affair with Kendall Truitt "gone sour" and his alleged murder-suicide pact as the cause of the explosion was "calculated to gain public support for the government's 'Hartwig did it' theory." Pls.' Mem. in Opp. to United States' Motion to Dismiss at 71. Upon review of the many news releases which Plaintiffs contend represent leaked information regarding Clayton Hartwig's status as a suspect in the investigation, the Magistrate Judge concluded that this claim, too, arises out of defamation. Plaintiffs' emotional distress was caused by the release of information by the government which they believed to be false, which was communicated to others and which harmed the reputation of Clayton Hartwig. R & R at 21–22. Similar to *O'Ferrell,* the conduct forming the basis of Plaintiffs' claim, the leaking of confidential information by the government to the media, amounts to defamation: "the injury is to reputation; the conduct is the communication of an idea...." *O'Ferrell,* 968 F.Supp. at 1529.

### (3.) *Categories 3 and 5–7*

#### *The Government's Sham Investigation, Selective Use of Evidence, Suppression of Evidence and Falsification of Evidence*

The Magistrate Judge found that the same rationale applied to the Plaintiffs' remaining claims. After reviewing all of the facts, he determined that it was evident that Plaintiffs only suffered harm as a result of the government's investigative tactics because Clayton Hartwig was the focus of the investigation and was identified as having caused the U.S.S. Iowa explosion. R & R at 22–23. The Magistrate

---

**2.** As the Magistrate Judge explained, "an Appointing Order is the means by which an investigating officer, in this case Rear Admiral Milligan, becomes empowered to conduct and administer an investigation of a particular matter, such as the cause of the explosion on board the U.S.S. Iowa." R & R at 18.

Judge was also persuaded by the Plaintiffs' own testimony which showed that had the government investigators not targeted Clayton Hartwig, the Plaintiffs would not have suffered emotional distress. *Id.* at 23. As his mother explained in her deposition, the primary cause of her injury was the "trashing [of her] son's reputation." Evelyn Hartwig Depo. at 309. Clayton's sister, Cynthia Werthmuller, testified similarly. She noted that she "would be an R.N. working [her] way in a nice nursing home somewhere if the Navy hadn't accused [her] brother of doing this." Werthmuller Depo. at 146. In holding that the Plaintiffs' remaining claims are barred by § 2680(h), the Magistrate Judge compared this case to that of *Kugel.* As in that case, the actual cause of Plaintiffs' injury was the dissemination of information pertaining to the investigation which Plaintiffs believed to be false.

## IV. PLAINTIFFS' OBJECTIONS

In their Supplemental Objections, Plaintiffs contend that the Report and Recommendation is erroneous for three reasons. First, they argue that the Magistrate Judge's reliance on *Metz* was misplaced as the Sixth Circuit has "never adopted the *Metz* test; ... there is every reason to believe that it would not, ... and *Metz* is a distinctly minority opinion...." Pls.' Supp. Mem.Supp. Pls.' Objections to R & R at 5–6. Next, they maintain that the Magistrate Judge erred in holding that defamation is essential to Plaintiffs' claims. Finally, they assert that the Report and Recommendation resolved genuine issues of material fact against Plaintiffs.

### A. *Metz v. United States*

#### (1.)

According to Plaintiffs, whether the underlying governmental conduct forming the basis of an excepted cause of action is "essential" to a claim raised by a plaintiff is not the question a court should ask in determining whether a claim is barred by § 2680(h). Such a test, they claim, is too narrow and would bar claims that Congress did not intend to bar when it enacted § 2680(h):

> The overarching error in the Report and Recommended Decision and *Metz* is that they would bar every imaginable claim for the infliction of emotional distress and unwarranted invasions of privacy, unless ones could somehow be crafted that did not involve an unwanted touch, or the publication of lie or innuendo, or entry into a home under false pretenses.... [C]ountless Circuit Court decisions upholding claims under the Federal Tort Claims Act for torts other than the infliction of emotional distress ... would have been barred if *Metz* had been applied.

*Id.* at 7.

Plaintiffs advance the test used in *Truman v. United States,* 26 F.3d 592 (5th Cir.1994), as the appropriate standard in this case:

> So long as some aspect of the conduct upon which a plaintiff bases a tort claim does not constitute a tort listed in section 2680(h), the suit is not barred.

*Truman,* 26 F.3d at 595. Further, Plaintiffs contend that instead of *Kugel* and *Art Metal,* the Magistrate Judge should have relied on another D.C. Circuit case, *Black v. Sheraton Corp.,* 564 F.2d 531 (D.C.Cir. 1977), and on the Sixth Circuit's decision in *Keir v. United States,* 853 F.2d 398 (6th Cir.1988).

In *Black,* the plaintiff brought a suit for injuries arising from an allegedly improper FBI investigation. The government contended that because the plaintiff sought to recover for injury to his reputation, the libel and slander exceptions of § 2680(h) barred his claims. Plaintiffs quote the following language from the *Black* opinion as support for their contention that their claims are not barred by § 2680(h):

> We disagree with these contentions because we believe that the government mistakes particular items of damages for the tortious wrongs alleged in plaintiff's complaint. Plaintiff is not simply suing

for damage to his reputation and to his earning ability, he is suing for the physical trespass and unlawful invasion of his privacy that caused that damage.

\*    \*    \*    \*    \*    \*

The distinction we seek to draw [is] between the tortious wrong alleged in plaintiff's complaint and the items of damage flowing therefrom.

*Black,* 564 F.2d at 540–541.

Even on a cursory overview, Plaintiffs' reliance on *Keir* is somewhat questionable. First, they claim that in *Keir,* the Sixth Circuit "rejected the sweeping test advanced by the government in *Metz* " without citing any language or facts from the case and without attempting to analogize that case to the instant one. Pls.' Supplemental Objections at 9. Again, without any citations to *Keir,* they later note that the *Black* decision is consistent with *Keir* in that *Keir* also "clearly distinguished between claims that are of a contractual nature and those that are personal which cause financial damages." Plaintiffs never explain exactly how they came to the conclusion that the *Black* Court drew such a distinction.

Additionally, Plaintiffs argue that the Magistrate Judge improperly relied on *Kugel* and *Art Metal.* They maintain that in both of these cases, the claims were barred because the wrongs alleged were contractual, as opposed to personal, in nature. Accordingly, it was the bar on causes of action based on "misrepresentation and prospective economic advantage" that prevented the plaintiffs in those cases from proceeding with their claims. *Id.* at 9. While Plaintiffs attempted to distinguish *Kugel* and *Art Metal* in their Memorandum in Opposition to United States' Motion to Dismiss, they assert their contractual harm-personal harm theory for the first time in their Supplemental Objections.

### (2.)

A review of the pertinent case law reveals that the Magistrate Judge did not improperly rely upon *Metz* or the standard applied in that case. The test used by the *Metz* court was derived from a number of Supreme Court cases in which the Court had provided guidance to lower courts called upon to interpret § 2680(h). In formulating its test, "that a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim," the Eleventh Circuit primarily relied upon the Supreme Court's decision in *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). *Metz,* 788 F.2d at 1534 (quoting *Block,* 460 U.S. at 296, 103 S.Ct. 1089). In *Block,* the Court had to determine whether Neal's claim of negligence based upon the Farmers Home Administration's ("FmHA") alleged misstatements with respect to her home's compliance with FmHA standards fell within the exception for misrepresentation in § 2680(h). The Court compared the case before it to *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), where the Court held that a plaintiff's claim of negligence "was in essence a negligent misrepresentation" claim and was therefore barred under the misrepresentation exception. *Block,* 460 U.S. at 297, 103 S.Ct. 1089. In reaching its decision that Neal's claim was not barred by this exception, the Court stated, "[I]n this case, unlike *Neustadt,* the Government's misstatements *are not essential* to plaintiff's negligence claim." *Id.* (Emphasis added). Thus, in light of applicable Supreme Court precedent, Plaintiffs' contention that the *Metz* test is too narrow is without merit.

Plaintiffs' citations to *Black, Truman* and *Keir* do not alter this conclusion, nor does their attempt to distinguish *Kugel* and *Art Metal.* First, the court in *Black* did not have before it the question of whether a claim "arose out of" an excepted cause of action in § 2680(h). Rather, the government in that case contended that the plaintiffs' claims should be dismissed because the ultimate injury they suffered

was to their reputation. The court rejected the government's argument, noting that § 2680(h) requires that a court focus on the challenged conduct, not the injury suffered. Such a holding is consistent with *Metz*, wherein the court also sought to draw a distinction between the injury alleged and the tortious conduct forming the basis of a plaintiff's claim, holding that the focus should be upon the latter.

*Truman* does not aid Plaintiffs either, as it is distinguishable from the instant case and is also consistent with *Metz*. In *Truman*, the plaintiff brought a claim of intentional infliction of emotional distress against the United States alleging sexual harassment by a government employee. The United States argued that her claim should be barred because it arose out of an assault or a battery. The Fifth Circuit rejected this argument because the offending conduct (off-color remarks, dirty jokes, sexually suggestive remarks and gestures, and verbal abuse) could not amount to either a battery or an assault. *Truman*, 26 F.3d at 595–596. The plaintiff had not alleged that the employee had committed an "offensive contact," an essential element of a battery, or that he had "intentionally placed her in imminent apprehension of harmful or offensive contact," as required to make out a claim for assault. *Id.* at 596. The court explained the reasoning for its holding:

> If the conduct on which Truman bases her claim for intentional infliction of emotional distress constitutes a claim "arising out of" what is traditionally taken to be a tort enumerated in section 2680(h), then Truman's claim is barred. Conversely, if the conduct on which Truman bases her claim for intentional infliction of emotional distress does not constitute a tort enumerated in section 2680(h), then Truman's claim is not barred.

*Id.* at 595.

*Keir* is equally unhelpful to Plaintiffs. Contrary to their assertions, the *Keir* court does not "reject[ ] the sweeping test advanced by the government in *Metz* ";

the *Keir* opinion does not even mention *Metz*. Moreover, *Keir* is inapplicable to the instant situation. The plaintiff in that case had brought a malpractice action against a military doctor. The government argued that the plaintiff's claims were barred by both the battery and the misrepresentation exceptions to § 2680(h). The Sixth Circuit disagreed, holding that as to the battery exception, the United States has specifically waived its immunity for malpractice actions in 10 U.S.C. § 1089(e) and that the misrepresentation exception to the government's waiver of immunity is inapplicable in malpractice cases. *Keir*, 853 F.2d at 409–410.

Finally, there is simply no merit to Plaintiffs' claim that *Kugel* and *Art Metal* are distinguishable because the nature of the claims in those cases was contractual or business-related as opposed to personal. In neither case did the D.C. Circuit draw such a distinction. As discussed above, the critical question in *Kugel* was whether the allegation of negligent investigation arose out of defamation, not the tort of interference with contract rights. *Kugel*, 947 F.2d at 1506–1507. It is clear from the opinion that the determination of that issue did not turn on the business nature of the claim alleged. Likewise, while the *Art Metal* court did address the interference with contract rights exception in § 2680(h) as Art–Metal had alleged several counts of interference with its prospective economic advantage, the court was also asked to determine whether Art–Metal's claim for injurious falsehood was barred by the libel and slander exception. *Art Metal*, 753 F.2d at 1155–1156. Moreover, the *Kugel* court cited *Art Metal* for its holding that "a litigant may not substitute the name of a cause of action not included in section § 2680(h) for one that is included where the alleged breach of duties in the two claims is identical". *Kugel*, 947 F.2d at 1506–1507. This holding is applicable regardless of which excepted tort the government claims applies.

For the foregoing reasons, this court concludes that the Magistrate Judge applied the appropriate standard for determining whether Plaintiffs' claims arise out of defamation.

## B. *Defamation*

### (1.)

Plaintiffs contend that defamation is not essential to their claims for several reasons. In their Supplemental Objections, they assert for the first time that Clayton Hartwig cannot be defamed because he is no longer living. They maintain that because any interest he had in his reputation perished with him when he died in the U.S.S. Iowa explosion, no one, including his relatives or his estate, could recover for defamation against him. In a similar vein, Plaintiffs assert that Clayton Hartwig is not a party to this action, and "there is no precedent in American jurisprudence for dismissing a Federal Tort Claims Act suit based on defenses to potential claims of someone not a party." Pls.' Reply Mem. Supp. Pls.' Supplemental Objections at 1.

In support of this argument, Plaintiffs also point to the Appointing Order as a limitation on the United States' defenses. In their reply in support of their Supplemental Objections, they argue for the first time:

> It is critical to note that the Appointing Order does not establish the basis of plaintiff's claims, as the Navy suggests. The true effect of the Appointing Order is to limit the Navy's defenses because, unlike plaintiffs' claims, the exceptions listed in Section 2680(h) 'must be construed as a matter of federal, not state, law.' Federal law, *i.e.* the Appointing Order, clearly provides that the Navy cannot defend this suit on the ground that its utterances about Clayton Hartwig were true, as would be the case were defamation 'essential to plaintiffs' claims. All that is essential here is proof that the government spoke, which

is not conduct excepted from FTCA liability under Section 2680(h).

*Id.* at 3–4 (citations omitted).

### (2.)

This court is not persuaded by Plaintiffs' contention that the defamation of Clayton Hartwig is not essential to their claim because Clayton is dead. If Clayton Hartwig had survived the explosion aboard the U.S.S. Iowa and later tried to sue the United States for defamation based on the same allegations his family now raises, his claim would be precluded by § 2680(h). Logically, his family's suit, which is derivative of the claims that Clayton would bring, should also be barred. That Clayton Hartwig is now dead does not change this conclusion.

■ Moreover, the analysis under § 2680(h) is not whether Clayton or his estate is technically able to sue for defamation, but whether the conduct alleged in the complaint arises out of an excepted tort. A review of the Plaintiffs' pleadings, motions and depositions in this case reveals that the fact that the government defamed Clayton Hartwig by leaking false statements about his involvement in the explosion to the media and communicating such information to others is essential to Plaintiffs' claims. *See* R & R at 18–26. As the Magistrate Judge explained, such conduct by the government is not actionable, and Plaintiffs' claims cannot rest thereupon. Therefore, this court holds that insofar as Plaintiffs' claims are dependent on the government's dissemination of false information about Clayton Hartwig, they are barred.

As for the Plaintiffs' argument that defamation is not essential to their claims because the Appointing Order "clearly provides that the Navy cannot defend this suit on the ground that its utterances about Clayton Hartwig were true," the court finds that it is without merit. First, while Plaintiffs now claim that they are not attempting to base their claims on the violation of the Appointing Order by the Navy,

this was not the case in their Memorandum in Opposition to United States' Motion to Dismiss. There, the Plaintiffs explicitly argued that their claims were, in fact, based upon violation of the Appointing Order. They stated, "[the government's] conduct does not 'arise out of' the defamation of Clayton Hartwig. Rather it arises out of the government violating its own charter [the Appointing Order] for the Iowa investigation; and plaintiffs' claims based on this conduct are not barred by § 2680(h)." Pls.' Mem.Opp. United States' Motion to Dismiss at 71. Plaintiffs should not be permitted to change their argument with respect to the Appointing Order simply because the Report and Recommendation's ultimate conclusion was contrary to their position.

Moreover, the Plaintiffs' new argument with respect to the Appointing Order does not affect the determination of whether the Plaintiffs' claims arise out of defamation. Apparently, Plaintiffs' contention is that their claims cannot be based on defamation because the United States could not defend such a claim on the basis that its statements about Clayton Hartwig were true. Even if it were true that the Appointing Order prohibited the United States from "speaking" at all about the investigation, Plaintiffs' argument is still not well-taken. Plaintiffs have cited no authority to support their position that a cause of action does not lie where a defendant cannot raise a defense to the asserted claim. Along those lines, the elements of a cause of action normally do not include any potential defenses to the cause of action. *See, e.g.*, Section II.B. above (listing elements of defamation). Finally, the United States has not even asserted the defense of "truth" to the Plaintiffs' claims, making their argument irrelevant.

### C. *The Underlying Facts*

#### (1.)

Finally, Plaintiffs assert that the record demonstrates that they sustained injuries from wrongs that were separate and distinct from the Navy's defamation of Clayton Hartwig. As support for this argument, Plaintiffs reference Evelyn Hartwig's deposition wherein she explained that the government misused Clayton's last letter to her, stating, "[t]hey invaded my life, the words that my son wrote to us, his parents." Evelyn Hartwig Depo. at 116. Plaintiffs further contend that the government's "private communication of falsehoods, misrepresentations, and innuendoes to the Hartwigs also caused grave injury, without regard to whether they were true or publicized." Pls.' Reply Mem. Supp. Pls.' Supplemental Objections at 14. Plaintiffs also claim that they were injured when the government privately informed them that they believed Clayton had caused the explosion on board the U.S.S. Iowa. Finally, they cite the fact that the government showed them a fabricated videotape in their own home designed to make them believe that Clayton had caused the explosion.

Defendant United States argues that these claims should be dismissed because they arise from conduct directed at Plaintiffs and are therefore barred by the exhaustion of remedies requirement in § 2675(a). Citing the Report and Recommendation as support, Defendant contends that these claims cannot survive because the administrative claims Plaintiffs presented to the Navy do not allege conduct directed toward the Plaintiffs themselves. The Magistrate Judge explained, "the [administrative] claim[s] filed by [Plaintiffs] did not include allegations of conduct directed toward plaintiffs, focusing upon conduct directed toward Clayton Hartwig . . . . [t]herefore, [such] claim[s] would be subject to dismissal for failure to exhaust administrative remedies." R & R at 29.

#### (2.)

■ To the extent that Plaintiffs seek to argue that the government's private communication to them of false information regarding Clayton's involvement in the explosion did not constitute defamation, the court does not agree that this is so. Restatement (Second) of Torts § 577, "What

Constitutes Publication," provides that "[p]ublication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." Comment J to this section states, "[t]he communication to one spouse of matter defamatory of the other spouse constitutes a publication." The same would hold true of the communication to any relative of defamatory statements made concerning another relative, as is the case here. Accordingly, Plaintiffs cannot escape the conclusion that their claims arise out of defamation by alleging that the Navy showed the Plaintiffs the allegedly fabricated videotape in the privacy of their own home or that it informed Plaintiffs in private that Clayton was the prime suspect in the investigation because such conduct does, in fact, constitute defamation.

Even if the Plaintiffs were correct in their assertions that this conduct does not constitute defamation, the court finds that Plaintiffs' emotional distress claims based on conduct directed at them as opposed to Clayton are barred for failure to exhaust administrative remedies. Prior to bringing an action under the FTCA, a plaintiff must present the claims forming the basis of an action to the appropriate federal agency. 28 U.S.C. § 2675(a). In making such an administrative claim, a plaintiff need not "propound every possible theory of liability"; however, to satisfy the requirements of § 2675(a), he or she must provide sufficient information to the agency to enable the agency to make a thorough evaluation of the plaintiff's claim. *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011–1012 (7th Cir.1991) (citing *Dundon v. United States*, 559 F.Supp. 469, 476 (E.D.N.Y.1983) (A plaintiff cannot "present one claim to the agency and then maintain suit on the basis of a different set of facts.")). *See also Douglas v. United States* 658 F.2d 445, 447 (6th Cir.1981).

Courts construing § 2675(a) have held that where an administrative claim does not include facts on which a cause of action is later based, such cause of action cannot be maintained in the courts. For example, the plaintiff in *Deloria* alleged in an administrative claim that Veterans Administration ("VA") employees conspired to alter his medical records and then later brought suit alleging malpractice and negligence on the part of the VA. The court held that the plaintiff had failed to exhaust his administrative remedies because the conspiracy charges were insufficient to apprise the VA of his subsequent malpractice and negligence charges as "the[ ] allegations involve[d] wholly distinct incidents" from those alleged in his administrative claim. *Deloria*, 927 F.2d at 1012. As the court explained, "[i]nvestigation of the charge that VA officials conspired to alter Deloria's records ... would not provide the VA with notice of Deloria's additional claims of medical malpractice and negligent supervision." *Id.*

The Plaintiffs used the following language to complete the "Basis of Claim" section of the administration claims they filed:

Claimant asserts that the Navy and/or Naval Investigative Service willfully, wantonly, maliciously, and with gross negligence and/or negligently wrongfully [*sic* ] investigation of the tragic accident in Turret # 2 aboard the U.S.S. Iowa on April 19, 1989. In the course of the investigation, unidentified members of the U.S. Navy and/or N.I.S. released false, misleading, and harmful information concerning Clayton Hartwig without substantiation. The information leaked implied that Clayton Hartwig was homosexual and because of an alleged affair with another sailor, committed suicide and mass murder of the 46 other sailors killed in the said accident. (continued on attached page)

Further, the U.S. Navy, by and through Rear Admiral Richard Milligan, Vice-Admiral Leon Edney and other Navy and NIS personnel, prepared and/or issued and/or disseminated an official report and conducted a press conference wherein said Clayton Hartwig was labeled, inter alia, a troubled young man

with low self-esteem who was responsible for an intentional wrongful act, i.e. planting an explosive device in the center gun of Turret # 2 of the USS Iowa, that caused the explosion that led to his death as well as the deaths of 46 of his shipmates. As a result, this claimant has been subjected to embarrassment, outrage, humiliation and disgrace of the Hartwig family name. Claimant seeks compensation for their personal injury and damages arising out of these false accusations and the intentional and/or negligent infliction of emotional distress and harm.

The central focus of Plaintiffs' administrative claims was that Clayton's reputation as well as their reputations were harmed by the government's dissemination of information regarding Clayton's involvement in the explosion. Plaintiffs included no factual allegations of misconduct by the government directed toward themselves, focusing only upon conduct directed toward Clayton. Any emotional distress claim Plaintiffs attempted to raise in their administrative claims was clearly based on the publication of negative information about Clayton Hartwig and was unrelated to the Defendant's presentation of such negative information to the Plaintiffs in private, as they now try to argue. In fact, the administrative claims filed by the Plaintiffs made this quite clear when they stated that their alleged damages flowed from the "humiliation and disgrace of the Hartwig family name".

As discussed earlier, Plaintiffs were not required to set forth in detail the facts that formed the basis of their claims for emotional distress. However, they were required to at least plead generally facts that would implicate the causes of action they have raised in their Complaint. In Ohio, claims for intentional infliction of emotional distress and negligent infliction of emotional distress require that a plaintiff prove the following:

*Intentional Infliction of Emotional Distress:*

Plaintiffs must show that (1) the United States' intended to cause them emotional distress or knew or should have known that its actions would result in their serious emotional distress (2) the United States' conduct was extreme and outrageous, and that it went beyond all possible bounds of decency (3) the United States' actions were the proximate cause of the Plaintiff's psychic injury, and (4) that the mental anguish Plaintiffs suffered is serious and of a nature that no reasonable person could be expected to endure.

*See Pyle v. Pyle,* 11 Ohio App.3d 31, 463 N.E.2d 98, 103 (1983). *See also Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America, et al.,* 6 Ohio St.3d 369, 453 N.E.2d 666, syl., 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983).

*Negligent Infliction of Emotional Distress:*

"[R]ecovery for negligent infliction of emotional distress [is limited] to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person."

*Rine v. Sabo,* 113 Ohio App.3d 109, 680 N.E.2d 647, 654 (1996) (citations omitted).

Plaintiffs' administrative claims make no suggestion of facts sufficient to prove the elements of either of these claims. Consequently, the Plaintiffs' administrative claims were deficient in the same way as the administrative claim at issue in *Deloria;* they did not apprise the United States of the allegations they have now made regarding misconduct by the Defendant directed at them as opposed to Clayton. As in that case, Plaintiffs' records "thus would not provide the [United States] with notice of [their claims of emotional distress]." *Deloria,* 927 F.2d at 1012. On the other hand, as discussed

above, Plaintiffs' administrative claims clearly implicated the tort of defamation.

## V. CONCLUSION

After careful consideration, the court finds that Plaintiffs' claims are barred by 28 U.S.C. § 2680(h) and by the doctrine of exhaustion of remedies. Plaintiffs' claims rest almost exclusively on their allegations that the Navy disseminated false information to the public about Clayton Hartwig's involvement in the explosion aboard the U.S.S. Iowa on April 19, 1989. Such conduct "resounds in the heartland of defamation," an intentional tort for which the United States has not waived its sovereign immunity. *O'Ferrell,* 968 F.Supp. at 1529. Thus, however hurtful the government's actions may have been, they cannot form the basis of a claim against the United States.

Any misconduct by the government directed at Plaintiffs themselves, and allegedly distinct from defamatory statements disseminated to the public, also cannot form the basis of their action. First, Plaintiffs' argument that the government's private communication to them of false information regarding Clayton's involvement in the explosion did not constitute defamation is not well-taken. Communication to a relative of defamatory statements made concerning another relative is defamation. Even if this private communication was not defamation, such conduct is not actionable because any claim based thereupon is barred by the doctrine of exhaustion of remedies. In their administrative claims, Plaintiffs were required to apprise the Navy of the facts upon which their action against the government was based so that the Navy could conduct a complete investigation into their allegations. However, their administrative claims focused solely on harm done to Clayton's reputation and the "Hartwig family name," and no inference can be drawn from a reading of their claims that they are based on anything other than defamation. Accordingly, Plaintiffs have failed to exhaust their remedies with respect to any claims based on the private

presentation by the government of information regarding Clayton's involvement in the U.S.S. Iowa explosion and therefore their claims are not actionable.

Thus, for the reasons advanced by the Magistrate Judge and those discussed herein, the court adopts the Report and Recommendation of the Magistrate Judge (Doc. No. 260) recommending that the United States' Motion to Dismiss (Doc. No. 234) be granted.

IT IS SO ORDERED.

## *JUDGMENT ENTRY*

The court, having adopted the Magistrate Judge's Report and Recommendation, (Doc. No. 250), recommending that the United States' Motion to Dismiss, (Doc. No. 234), be granted, hereby enters judgment for the Defendant and against the Plaintiffs.

IT IS SO ORDERED.